WALTER BURINSKAS ET AL. *v.* DEPARTMENT
OF SOCIAL SERVICES
(15440)

Borden, Berdon, Norcott, Palmer and McDonald, Js.

Argued January 15—officially released March 18, 1997

*Karen Haabestad Fritzinger*, assistant attorney general, with whom were *Peter Brown*, assistant attorney general, and on the brief, *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellant (defendant).

*Michael C. Stumo*, for the appellees (plaintiffs).

*Opinion*

NORCOTT, J. Under medicaid eligibility law, the resources of an institutionalized applicant may be allocated to a spouse under circumstances in which the spouse needs income "due to exceptional circumstances resulting in significant financial duress . . . ." 42 U.S.C. § 1396r-5 (e) (2) (B). The principal issue in this administrative appeal is whether the defendant, the department of social services (department), properly applied the "exceptional circumstances" standard in

refusing to allocate resources to the spouse of an institutionalized applicant. The plaintiff Mary Burinskas applied for and was denied medicaid benefits by the department. The denial was affirmed both after a fair hearing before a hearing officer and, upon request, after a reconsideration of the fair hearing decision by the same hearing officer. Thereafter, Mary Burinskas and her husband, the plaintiff Walter Burinskas,[1] appealed from the department's decision to the trial court pursuant to General Statutes § 4-183 (a), which authorizes appeals to the trial court upon exhaustion of all administrative remedies. The trial court reversed the department's denial of medicaid benefits and remanded the case for further administrative proceedings. The department appealed from this judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court in part and reverse it in part.

The following facts are relevant to this appeal. In 1994, the plaintiffs applied for medicaid benefits to defray costs associated with Mary Burinskas' institutionalization for Alzheimer's disease. The department, after calculating the couple's total assets, determined that the value of Mary Burinskas' assets exceeded the $1600 limit for program eligibility;[2] see General Statutes §§ 17b-80 and 17b-264; Department of Income Maintenance, Uniform Policy Manual (1993) § 4005.10 (Uniform Policy Manual); and, on that basis, denied her application for medicaid benefits.

The plaintiffs then exercised their right to an administrative appeal before a fair hearing officer. See 42 U.S.C.

[1] Hereafter, we refer to Walter and Mary Burinskas collectively as the plaintiffs.

[2] The department found that the plaintiffs together owned $172,456.52 in liquid assets. Of this amount, the department allocated $72,660 to Walter Burinskas and the remaining $99,766.52 to Mary Burinskas.

§ 1396r-5 (e) (2) (A); Uniform Policy Manual (1989) § 1570.25. At the fair hearing, they claimed that Mary Burinskas' allocation of the couple's assets should be decreased and Walter Burinskas' allocation increased in order to generate income necessary to cover Walter Burinskas' living expenses. In addition to presenting evidence regarding all of his monthly expenses,[3] the plaintiffs contended that Walter Burinskas suffered from emphysema and, as a result, incurred particular expenses for snow removal, home maintenance, lawn care, and housecleaning chores that he was unable to perform himself. Under the plaintiffs' reallocation proposal, resources would have been transferred to Walter Burinskas sufficient to reduce Mary Burinskas' asset share to the medicaid eligibility level.

Both after the fair hearing and upon reconsideration, the hearing officer refused to recalculate Mary Burinskas' asset share to reflect Walter Burinskas' expenses. In his reconsideration report, the hearing officer recognized that under relevant medicaid law, resources may be allocated to the spouse of an institutionalized applicant where the spouse needs income "due to exceptional circumstances resulting in significant financial duress." 42 U.S.C. § 1396r-5 (e) (2) (B); Uniform Policy Manual (1989) § 1570.25 (D) (3) (b). The hearing officer, in construing this standard, stated that in order for an expense to qualify under this standard, "the *expense* must be an exceptional circumstance . . . ." (Emphasis added.) The hearing officer then held that expenses associated with such things as snow removal and lawn care were "expected everyday expenses" and thus insufficiently exceptional to war-

---

[3] The plaintiffs claimed that resources should be allocated to cover Walter Burinskas' expenses for such things as golf course fees, cable television bills, Elks membership, and groceries. At oral argument, the plaintiffs conceded that, to the extent these expenses do not flow from his health problems, they are not at issue in this appeal.

rant resource reallocation. The hearing officer refused to lower Mary Burinskas' asset share below the eligibility level and declined her medicaid application.[4]

On appeal to the trial court, the plaintiffs claimed that the hearing officer had improperly applied the exceptional circumstances standard. They argued that the hearing officer had focused on the exceptional nature of each *expense* and not on the *circumstances* giving rise to each expense. The trial court agreed. It concluded that the hearing officer "unmistakably [had taken] his task to be determining whether an expense was exceptional," and not whether the expense arose from exceptional circumstances. Deeming this approach "unsupported by the text" of either department regulations or federal statutes, the trial court reversed the hearing officer's decision and remanded the case for further administrative proceedings. Additionally, the trial court awarded attorney's fees to the plaintiffs pursuant to General Statutes § 4-184a (b).[5]

On appeal, the department challenges the trial court's determinations. It contends that the hearing officer's reconsideration report,[6] read in its entirety, reveals that

---

[4] The hearing officer did, however, reallocate resources for some expenses that he found met the exceptional circumstances standard. These included the cost of Walter Burinskas' medical treatment and the cost of his visiting Mary Burinskas in the medical institution where she resided. In addition, the hearing officer sheltered a portion of her assets in order to establish a burial fund. See Uniform Policy Manual (1989) § 4000.01. These recalculations, however, did not lower her asset share below the medicaid eligibility level.

[5] General Statutes § 4-184a (b) provides in relevant part: "In any appeal by an aggrieved person of an agency decision taken in accordance with section 4-183 . . . the court may, in its discretion, award to the prevailing party, other than the agency, reasonable fees and expenses in addition to other costs if the court determines that the action of the agency was undertaken without any substantial justification."

[6] Because the parties have focused their arguments on the hearing officer's reconsideration report and because that report contains a fuller and clearer depiction of the hearing officer's legal analysis than does his initial fair

the hearing officer functionally applied the proper exceptional circumstances standard and that, if the hearing officer imprecisely articulated this standard, he did so in response to the manner in which the plaintiffs had addressed their claims. The department further contends that the hearing officer's decision was consistent with Congress' intent, in prescribing relevant medicaid eligibility law, to prevent spousal impoverishment without guaranteeing any preset living standard. Finally, the department claims that the hearing officer's report, even if flawed, is not "without any substantial justification" as that phrase is used in subsection (b) of § 4-184a, the attorney's fees statute. We agree with the trial court that the hearing officer employed an improper standard in determining whether Walter Burinskas' expenses resulted from exceptional circumstances and that, therefore, the hearing officer's decision must be reversed. We conclude, however, that the trial court abused its discretion in awarding attorney's fees pursuant to § 4-184a (b).

I

The department first claims that the trial court improperly reversed the decision of the administrative hearing officer. Judicial review of an agency decision is limited. See General Statutes § 4-183 (j);[7] *Connecticut*

hearing report, we will confine our discussion to the reconsideration report unless otherwise indicated.

[7] General Statutes § 4-183 (j) provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under

*Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, 233 Conn. 28, 39, 657 A.2d 630 (1995). "[W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted *from a correct application of the law* to the facts found and could reasonably and logically follow from such facts." (Citation omitted; emphasis added; internal quotation marks omitted.) Id.

Although courts ordinarily defer to an agency's interpretation of statutory text, where, as in this case, "the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation"; (citation omitted; internal quotation marks omitted) *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services*, 202 Conn. 583, 599, 522 A.2d 771 (1987); that construction constitutes a question of law for which deference is not warranted. See *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, supra, 233 Conn. 41–42. In the same vein, § 4-183 (j) authorizes a court to reverse the decision of an administrative body if that decision is, inter alia, "[i]n violation of constitutional or statutory provisions . . . in excess of the statutory authority of the agency . . . made upon unlawful procedure . . . [or] affected by other error of law . . . ." The trial court in this case determined that the hearing officer's misapplication of the exceptional circumstances standard implicated the

subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment."

heightened judicial review contemplated by § 4-183 (j) and merited reversal. We agree.

A

In order properly to characterize the issues on appeal, it is necessary to overview the complex of statutes and regulations governing medicaid eligibility for institutionalized applicants. The medicaid program, established in 1965 as Title XIX of the Social Security Act, and codified at 42 U.S.C. § 1396 et seq., is a joint federal-state venture providing financial assistance to persons whose income and resources are inadequate to meet the costs of necessary medical care. See *Ross* v. *Giardi*, 237 Conn. 550, 555, 680 A.2d 113 (1996). States participate voluntarily in the medicaid program, but participating states "must develop a plan, approved by the secretary of health and human services, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance . . . . Connecticut has elected to participate in the medicaid program and has assigned to the department the task of administering the program. General Statutes [§ 17b-260]." (Citations omitted; internal quotation marks omitted.) Id., 555–56. The department, as part of its uniform policy manual, has promulgated regulations governing the administration of Connecticut's medicaid system. See General Statutes § 17b-260.

In 1988, Congress passed into law the Medicaid Catastrophic Care Act (catastrophic care act). 42 U.S.C. § 1396r-5 (1988). This enactment was intended, in part, to ease the financial burden placed on a community spouse[8] under the prior statutory regime that required

---

[8] A "community spouse" is defined as "an individual who resides in the community [and] who is married to an individual who resides in a medical facility or long term care facility . . . ." Uniform Policy Manual (1989) § 4000.01; see also 42 U.S.C. § 1396r-5 (h) (2).

the institutionalized spouse to spend down a large portion of the couple's resources, and thus impoverish the community spouse, before becoming eligible for medicaid. See, e.g., *Krueger Estate* v. *Richland County Social Services*, 526 N.W.2d 456, 458 (N.D. 1994); H.R. Rep. No. 100–105 (II), 100th Cong., 2d Sess. 69–71 (1988), reprinted in 1988 U.S.C.C.A.N. 857, 892–94. Under the catastrophic care act, a community spouse is entitled to receive a " 'community spouse resource allowance' " (resource allowance), which is approximately one half of the couple's total liquid resources or \$60,000, adjusted annually for inflation, whichever is less. 42 U.S.C. § 1396r-5 (f) (2); see also Uniform Policy Manual (1996) § 4022.05 (B) (2) (using adjusted figures). The resource allowance is protected from the institutionalized applicant's health care obligations and does not count against the applicant's financial eligibility.

In addition, under the catastrophic care act, a community spouse is entitled to a "minimum monthly maintenance needs allowance" (minimum needs allowance).[9] 42 U.S.C. § 1396r-5 (d) (3); Uniform Policy Manual (1992) § 5035.30 (B) (2). If the community spouse's income from outside sources is insufficient to meet his minimum needs allowance, the institutionalized spouse is permitted to bridge this deficit by transferring income to the community spouse. 42 U.S.C. § 1396r-5 (d) (1) (B) and (2). If the transferred income is insufficient to reach the minimum needs allowance, the community spouse may then apply for an increase in his resource allowance to an amount adequate to fund his minimum needs allowance. 42 U.S.C. § 1396r-5 (e) (2) (C); see *Krueger Estate* v. *Richland County Social Services*, supra, 526 N.W.2d 459. Because this increase in the resource allowance results from a transfer of resources

---

[9] This amount is equal to 150 percent of the official poverty line for a family of two plus an "excess shelter allowance." 42 U.S.C. § 1396r-5 (d) (3).

from the institutionalized spouse to the community spouse,[10] the value of the institutionalized spouse's resources is brought closer to the eligibility level.

Under 42 U.S.C. § 1396r-5 (e) (2) (B),[11] a community spouse may obtain an increase in his minimum needs allowance by establishing, at a fair hearing, a need for additional income "due to exceptional circumstances resulting in significant financial duress . . . ." See also Uniform Policy Manual (1989) § 1570.25. At issue in this appeal is whether the fair hearing officer properly applied the exceptional circumstances standard in measuring Walter Burinskas' financial needs.

B

In his report, the hearing officer set forth his interpretation of the exceptional circumstances standard found in 42 U.S.C. § 1396r-5 (e) (2) (B). He parsed this standard into two requirements, concluding that in order for an expense to be "due to exceptional circumstances resulting in significant financial duress," the expense *"must be an exceptional circumstance"* and the expense "must create significant financial duress." (Emphasis added.) On the basis of this interpretation, the hearing officer asserted that expenses "expected and . . . incurred in the normal course of everyday living are not exceptional circumstances. Thus food,

---

[10] The income generated by the transferred resources is calculated as a percentage of those resources. In this case, the hearing officer applied a 5 percent return on resources he had transferred to cover costs associated with Walter Burinskas' medication and travel. See footnote 4. Neither party has challenged this rate of return.

[11] Title 42 of the United States Code, § 1396r-5 (e) (2) (B), provides in relevant part: "Revision of minimum monthly maintenance needs allowance

"If either . . . spouse establishes that the community spouse needs income above the level otherwise provided by the minimum monthly maintenance needs allowance, due to exceptional circumstances resulting in significant financial duress, there shall be substituted, for the minimum monthly needs allowance . . . an amount adequate to provide such additional income as is necessary."

clothing, lawn mowing, [and] snow removal are not exceptional circumstances. These expenses are expected everyday expenses of living and of home ownership, and therefore are not exceptional, extraordinary, uncommon, or sudden in nature." Having found that these everyday expenses failed to satisfy the exceptional circumstances standard, the hearing officer declined to increase Walter Burinskas' minimum needs allowance.

We agree with the trial court that, as a matter of law, the hearing officer set forth and relied upon a misinterpretation of the exceptional circumstances standard. The language of 42 U.S.C. § 1396r-5 (e) (2) (B), entails a finding of core "exceptional circumstances" that may give rise to expenses causing "significant financial duress." See footnote 11. This language does not require that the expenses themselves be exceptional. By narrowly focusing on the mundane nature of these expenses without inquiring into their allegedly exceptional genesis, the hearing officer failed to apply this standard properly. As a result, he did not properly address whether Walter Burinskas' emphysema was an exceptional circumstance causing significant financial duress in the form of increased home and yard maintenance costs.

In support of the hearing officer's decision, the department contends that a full reading of the hearing officer's opinion demonstrates that the hearing officer was applying the proper standard, no matter how unartfully phrased. We agree that, in certain instances in his opinion, the hearing officer appears accurately to have characterized the exceptional circumstances standard.[12] Yet, these instances alone are insufficient to

[12] For example, the hearing officer set forth the dictionary definition of "exceptional circumstances" and stated that an "exceptional circumstance" is "an expense related to a sudden and unexpected event." These explanations, although consistent with a proper application of the exceptional cir-

establish the overall propriety of the hearing officer's legal analysis. Although the department claims that it is impossible to imagine how the hearing officer could have considered Walter Burinskas' expenses without considering his emphysema as well, we conclude that it is impossible to say, upon a complete reading of the hearing officer's opinion, that the hearing officer did not apply the improper standard that he explicitly endorsed.[13]

The department also contends that even if the hearing officer misapplied the exceptional circumstances standard, he did so in response to the manner in which the plaintiffs had framed their claims at the fair hearing. In particular, the department contends that the plaintiffs focused their claims on the exceptional nature of Walter Burinskas' total monthly expenses and did not adequately characterize these claims in terms of any exceptional circumstances. While we agree that the plaintiffs' arguments at the administrative level were not limited to proving exceptional circumstances; see part II of this opinion; we nevertheless conclude that the plaintiffs sufficiently addressed his home and yard care expenses in terms of his medical condition[14] and that, therefore,

cumstances standard, are by themselves insufficient to salvage the hearing officer's report.

[13] For example, the hearing officer found that Walter Burinskas' medical expenses related to his emphysema were exceptional. See footnote 4. He failed, however, to articulate clearly how emphysema was an exceptional circumstance for purposes of medical expenses but not for purposes of other health related expenses. We do not suggest that such a finding is impossible, only that proper analysis is required before making it.

[14] At the fair hearing, counsel for the plaintiffs stated that "because [Walter Burinskas] cannot do any heavy lifting or do any of the yard work with his emphysema, he has to rely on others to do the snow removal, his lawn care and his housekeeping." Again, in their letter requesting reconsideration, the plaintiffs claimed that Walter Burinskas' emphysema "prevents him from performing the housecleaning, maintenance, lawn care and snow removal required to properly maintain his marital residence." The plaintiffs followed this request with a letter from a physician who stated that "[d]ue to his lung disease [Walter Burinskas] is unable to perform several of the usual household tasks including laundry and cleaning."

the hearing officer's failure to apply properly the exceptional circumstances standard to this condition necessitates reversal.[15]

The department also challenges the trial court's decision on the basis of the legislative history of the catastrophic care act. The department contends that the act was intended only to prevent the impoverishment of a community spouse and not to guarantee the amenities of any current lifestyle. See H.R. Rep. No. 100–105 (II), 100th Cong., 2d Sess. 69–71 (1988), reprinted in 1988 U.S.C.C.A.N. 857, 892–94. We do not disagree with this observation. Yet, recognizing Congress' primary intent does not serve to nullify the "exceptional circumstances" language that Congress itself inserted into the catastrophic care act; nor does it excuse the hearing officer from properly applying this language. If the plaintiffs can demonstrate that Walter Burinskas' minimum needs allowance legitimately should be increased on the basis of "exceptional circumstances resulting in significant financial duress," such an increase would be in furtherance, and not in derogation, of the catastrophic care act.

We conclude, accordingly, that the trial court properly determined that the hearing officer, by focusing on the exceptional nature of Walter Burinskas' expenses, rather than on the circumstances giving rise to these expenses, misapplied the standard set forth in 42 U.S.C. § 1396r-5 (e) (2) (B).[16]

---

[15] The department also contends that, because the plaintiffs did not challenge the hearing officer's formulation of the exceptional circumstances standard at the fair hearing, they should not be permitted to raise this argument on appeal. See *Dragan* v. *Connecticut Medical Examining Board*, 223 Conn. 618, 632, 613 A.2d 739 (1992) (party to administrative appeal may not raise claims not asserted at administrative proceeding). We disagree. Although it was not until their appeal to the Superior Court that the plaintiffs clearly articulated their attack on the hearing officer's exceptional expenses test, it was not until his final report upon reconsideration that the hearing officer clearly articulated his reliance on this improper standard.

[16] In so holding, we express no opinion on whether Walter Burinskas' emphysema constitutes an "exceptional circumstance resulting in significant

## II

The department's second claim on appeal is that the trial court improperly awarded attorney's fees to the plaintiffs pursuant to § 4-184a (b). See footnote 5. Specifically, the department claims that the trial court improperly determined that the hearing officer's decision was not supported by "any substantial justification." General Statutes § 4-184a (b). We agree.

The decision to award attorney's fees for unjustified agency actions is within the discretion of the trial court. See General Statutes § 4-184a (b); *Labenski* v. *Goldberg*, 41 Conn. App. 866, 871, 678 A.2d 496, cert. denied, 239 Conn. 910, 682 A.2d 1002 (1996). Thus, § 4-184a (b) provides that the "court may, *in its discretion*," award reasonable fees to the prevailing party if the court determines that the agency acted "without any substantial justification." (Emphasis added.) Accordingly, we review the trial court's decision to award attorney's fees for abuse of discretion.[17] *State* v. *Reddick*, 224

---

financial duress" or whether his house or yard care expenses constitute cognizable needs under 42 U.S.C. § 1396r-5 (e) (2) (B) and Uniform Policy Manual (1989) § 1570.25 (D) (3) (b). These are issues that fall within the hearing officer's province on remand.

[17] The department contends that an appellate court should apply an abuse of discretion standard only to the trial court's actual decision to award attorney's fees under § 4-184a (b) and not to its predicate determination that the agency acted "without any substantial justification." Under the department's construction of § 4-184a (b), this predicate determination would be subject to de novo review as a question of law. We disagree. The department has offered no persuasive authority, either in the form of legislative history or statutory analysis, to support this position, and we can discern none. Indeed, the United States Supreme Court, in considering similar language contained in the Equal Access to Justice Act; 28 U.S.C. § 2412 (d) (1) (A); has concluded that a trial court's decision that the action of a governmental agency was not "substantially justified" for purposes of awarding attorney's fees is properly reviewed under an abuse of discretion standard and not as a question of law. *Pierce* v. *Underwood*, 487 U.S. 552, 557–63, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988). The Supreme Court based this holding, inter alia, on principles of statutory construction and judicial administration that we find applicable and persuasive in the present case.

Conn. 445, 467, 619 A.2d 453 (1993) (reversal warranted "where an abuse of discretion is manifest or where injustice appears to have been done").

In order to determine whether the trial court abused its discretion in awarding attorney's fees pursuant to § 4-184a (b), it is first necessary to define the phrase "without any substantial justification." Our sole aim in this endeavor is to ascertain the intent of the legislature. Where the words of the statute are not unambiguous, "we look . . . to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 581, 657 A.2d 212 (1995).

In this case, the legislative history of § 4-184a (b) persuades us that the "without any substantial justification" test has its roots in a reasonableness standard. Representative Richard Tulisano, in support of this legislation, stated that § 4-184a (b) permits a court to award attorney's fees to those who can establish "the unreasonableness of a government" action. 26 H.R. Proc., Pt. 11, 1983 Sess., p. 3941. This interpretation is buttressed by a subsequently enacted statute, General Statutes § 38a-14 (k) (5), which, for purposes of awarding attorney's fees in a libel or slander action against an insurance commissioner, defines the phrase "substantially justified" as "hav[ing] a reasonable basis in law or fact." Furthermore, the United States Supreme Court has construed the phrase "substantially justified" as it is used in the attorney's fees provision of the Equal Access to Justice Act; 28 U.S.C. § 2412 (d) (1) (A); to mean "justified to a degree that could satisfy a reasonable person." *Pierce* v. *Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988).

We are persuaded by these sources that the phrase "substantial justification" as it is used in § 4-184a (b) connotes reasonableness or a reasonable basis in law or fact. See *Labenski* v. *Goldberg*, supra, 41 Conn. App. 872; see also *Federal Elections Commission* v. *Political Contributions Data, Inc.*, 995 F.2d 383, 386 (2d Cir. 1993), cert. denied, 510 U.S. 1116, 114 S. Ct. 1064, 127 L. Ed. 2d 384 (1994) (test for "substantially justified" incorporates reasonableness analysis). Accordingly, we construe the phrase "without any substantial justification" to mean entirely unreasonable or without any reasonable basis in law or fact. In our view, this demanding standard furthers the legislature's intent by striking a balance between compensating aggrieved litigants for unjustified agency action, and ensuring that not all agency actions that are subject to judicial reversal for legal error result in an award of attorney's fees.

Informed by this construction of § 4-184a (b), we conclude that the trial court abused its discretion in determining that the hearing officer's report was "without any substantial justification." As indicated previously, the hearing officer's misapplication of the exceptional circumstances standard flowed in part from the manner in which the plaintiffs couched their claims at the fair hearing. There, the plaintiffs focused, in part, on proving that Walter Burinskas' expenses, in the aggregate, created a financial hardship. They did not exclusively emphasize his emphysema-related expenses, nor did they clearly articulate these expenses in terms of the exceptional circumstances standard. That the plaintiffs may have imprecisely framed their claims at the administrative level does not legally validate the hearing officer's misapplication of the exceptional circumstances standard. It does, however, persuade us that this misapplication was not entirely unreasonable or without any reasonable basis in law or fact, particularly in view of the fact

that the hearing officer applied the medicaid eligibility provisions without the benefit of prior judicial guidance regarding the exceptional circumstances standard. See part I of this opinion. Instead of undertaking an inquiry into the reasonableness of the hearing officer's actions, however, the trial court based its award of attorney's fees solely on its determination that the hearing officer had "simply failed to give effect to the words" of the exceptional circumstances standard. In our view, this is tantamount to awarding attorney's fees simply on the basis of legal error and thus constitutes an abuse of discretion under § 4-184a (b). See *Mallory* v. *Mallory*, 207 Conn. 48, 56, 539 A.2d 995 (1988).

The judgment is affirmed with regard to the reversal of the hearing officer's decision and the case is remanded to the trial court with direction to remand the case to the department for further proceedings according to law; the judgment is reversed with regard to the award of attorney's fees.

In this opinion the other justices concurred.