[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 2222
The above-captioned administrative appeal concerns the plaintiffs' claim that a hearing officer of the State of Connecticut Department of Social Services ("Department") failed to properly follow federal and state law in determining Helen Burke's eligibility for Medicaid benefits and in determining her husband's (Joseph Burke) Minimum Monthly Needs Allowance ("MMNA") as the "community spouse." In addition, other mathematical and analytical errors are claimed.
The federal statute, at 42 U.S.C. § 1396r-5(e)(2)(B), provides as follows with regard to revision of the MMNA:
 If either such spouse establishes that the community spouse needs income, above the levels otherwise provided by the minimum monthly maintenance needs allowance, due to exceptional circumstances resulting in significant financial duress, there shall be substituted, for the minimum monthly maintenance needs allowed in subsection (d)(2)(A) of this section, an amount adequate to provide such additional income as is necessary.
Pursuant to Conn. Gen. Stat § 17b-10, the Department enacted a Uniform Policy Manual to implement the federal law as to the Connecticut program. Section 1570.25D of that Manual provides as follows:
(D) Non-Administrative Duties of Fair Hearing Official
 3. The official increases the MMNA of the community spouse previously determined by the Department:
 a) If it is established by the community spouse that the community spouse needs a higher monthly income than permitted by the MMNA calculation; and
 b) If this need for a higher income is due to exceptional circumstances resulting in significant financial duress including, but not limited to the financial burden of caring for a disabled child sibling, or other immediate relative.
c) without limiting his or her consideration to: CT Page 2223
 1) the shelter expenses indicated in policy (Cross Reference 5035.30); or
 2) the limitations placed on the MMNA (Cross Reference 5035.30).
The Department found that the Burkes' total non-exempt assets amounted to $119,723.03. To meet his MMNA, the Department determined that Mr. Burke's Community Spouse Protected Amount ("CSPA") should be adjusted to $89,725.00, effectively meaning that in order to be eligible for Medicaid, Mrs. Burke's adjusted share of the remainder of the couple's non-exempt assets would have to be spent down. Thus, as of February, 1997, Mrs. Burke was found to be ineligible for Medicaid.
The plaintiffs claim that the Department's calculations failed to give proper effect to the federal statute and related state regulation by which the community spouse is entitled to retain more of a couple's assets upon a showing of "exceptional circumstances resulting in significant financial duress. . . ."42 U.S.C. § 1396r-5 (e)(2)(B) (the "statute").[1]
Aggrievement
Since eligibility for a benefits program is at issue, the court finds that aggrievement has been shown as a result of the administrative decision of the Department. Water PollutionControl Authority v. Keeney, 234 Conn. 488, 494 (1995).
History of the Proceedings
Mrs. Burke was institutionalized in Mystic Manor Convalescent Home on October 8, 1996. Department's Notice of Decision. Findings of Fact, para. 3, dated June 18. 1997 (hereinafter "Notice of Decision" and "Findings"). She applied for Medicaid on October 15, 1996. Findings, para. 1. On March 3, 1997, Mr. Burke "requested an administrative hearing, seeking an increase in his Community Spouse Protected Amount (CSPA), a Community Spouse Allowance (CSA) and the granting of Medicaid to [Mrs. Burke] effective October, 1996." Notice of Decision at 1.
The Department's Memorandum to the Fair Hearing Officer assigned to the administrative hearing, dated April 1, 1997, Record at 7, summarized its allocation of the Burkes' assets, the CT Page 2224 total of which was $119,773.03. Mrs. Burke's non-exempt assets were found to exceed the allowable minimum of $1,600 for Medicaid eligibility. Id.
This summary contained an arithmetical error, mistakenly listing Mr. Burke's monthly income as $1,689.74 for 1996 and $1,717.04 for 1997, not the actual income of $1,562.56 and, $1,589.85 for those years, respectively. It is undisputed that this error resulted from carrying an additional $127.18 in interest income from Mr. Burke's share of the assets.[2]
At the hearing, which was held on April 14, 1997, Mr. Burke presented evidence concerning his "community spouse" living expenses at an assisted living facility. His counsel stated that the facility "provides some assistance with his daily needs that he would not be able to manage on his own otherwise." Record at 76. Also. she noted that his living expenses included the basic costs of housing and "some general supervision." Id.
Further, she stated:
 It is not a nursing home. I mean it is a community place. We have some other people who are there but they do provide some general over all supervision. They keep an eye on people which is why it is a little higher than a standard rent might be but you know that is part of what he gets for it.
Record at 76.
The hearing officer inquired as to whether Mr. Burke claimed "there is an exceptional circumstance resulting in significant financial duress." Record at 77.
The transcript reflects the following response and dialogue:
 Attorney Tedford. Well, yes, sure because I mean that is what we are trying to say. He needs additional care. He is not a young gentleman any longer.
Mr. Burke. No. I am 77.
Attorney Tedford. He needs some help and supervision. His wife has been CT Page 2225 ill. She is no longer there to help provide care for him. He needs help in preparing meals. The facility does meal preparation, does general supervision, gets people to doctors. He cannot drive a car. They provide transportation. So there are a number of services that are bundled up in the rent that he needs to manage. Without those services, he would not be able to manage in the community so what we are saying is that his health is and his physical limitations are the exceptional circumstances and on that basis, we want to increase the minimum monthly need allowance from the standard cap to something that approximates his needs.
 Ms. Knnopacke. Is his health other than. . . . How is his health an unusual circumstance for a community spouse?
Attorney Tedford: Well, many community spouses are in fine health. They have excellent eye sight, they can drive, they can prepare their own meals. They can look after their home and their yard and whatever is needed. Mr. Burke can't do any of those things. He can't drive. He can't prepare meals. He needs someone to be there to help supervise. I have done many fair hearings and I see a significant difference between Mr. Burke and many community spouses who are in fine health and can manage those things themselves. CT Page 2226
Record at pp. 77-78.
The hearing officer left the record open for ten days after the hearing, for the provision of insurance policies and for "proof that his health is other than a typical frail elderly community spouse" and "that this is an unusual circumstance that results in significant financial duress." Record at 78. When asked what was needed "medically," the hearing officer replied, "Well, legally, that is the statement that allows me to increase the MMNA." Record at 79. When advised that Mr. Burke could submit a document stating he was legally blind, the hearing officer replied, "That will be a very good piece of evidence." Id.
With the hearing officer's permission to submit evidence after the hearing was held, Mr. Burke presented medical evidence to the effect that he suffered a serious eye ailment known as macular degeneration. Record at 53. The hearing officer determined that he had been "legally blind since at least 1982" (Findings, para. 10), and found that his blindness "is an exceptional circumstance." Findings, para. 11.[3]
In her findings, the hearing officer concluded that Mr. Burke "did not claim any extraordinary expenses." Finding at para. 9, citing appellant's (Mr. Burke's) representative's memorandum. The finding also concluded that Mr. Burke's blindness, while an "exceptional circumstance." "does not result in significant financial duress." Id., para. 11. The only support for this finding appears to be the reference to Mr. Burke's memorandum.
The evidence presented concerning Mr. Burke's living expenses was uncontroverted. The Department's summary found that Mr. Burke's MMNA for 1996 was $2,499.50, but was capped at $1,918.50; for 1997 it was also $2,499.50, but was capped at $1,975.50. Record at 7. The hearing officer adopted these expense items, finding that Mr. Burke had monthly shelter costs of $1,594 and excess monthly shelter costs of $1,204.50. Finding, paras. 7 and 8.
Since Mr. Burke's income was insufficient to meet his capped MMNA, the hearing officer adjusted his CSPA to permit him to retain $89,725.00 of the couple's total assets. Id.,
paras. 16-17. Finally, the hearing officer concluded that since Mrs. Burke's share of the assets exceeded $1,600, she was ineligible for Medicaid as of February, 1997. Finding, para. 18. CT Page 2227
The Burkes' brief, dated November 24, 1997, at 5 and Deft. Mem. at 12, agree that the Burkes submitted a timely Request for Reconsideration, dated June 27, 1997, of the hearing officer s decision (the "Request"). According to the Burkes, no response was received to the Request. Plaintiffs' Brief at 5.
This appeal ensued. The Burkes seek a remand to review the spousal assets as of October, 1996: an adjusted MMNA, an adjusted CSPA and corrections to related calculations; a judgment reversing the Department's decision concerning financial duress resulting from Mr. Burke's exceptional circumstances; and attorney's fees and costs pursuant to Connecticut General Statutes § 4-184a. The Department also seeks a judgment of remand, by motion dated August 20, 1998.
Standard of Review
As our Supreme Court has noted in Burinskas v. Dept. ofSocial Services, 240 Conn. 141, 146 (1997) ("Burkinskas"). "[j]udicial review of an agency decision is limited." citing Connecticut General Statutes § 4-183 (j).
 "[W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citation omitted; emphasis added; internal quotation marks omitted.)
Burinska, at 147 (quoting Connecticut Alcohol Drug AbuseCommission v. Freedom of Information Commission, 233 Conn. 28, 39
(1995). Section 4-183 (j) provides that, "[i]f the court finds such prejudice, it shall sustain the appeal, and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings."
Moreover, as in Burkinskas, the instant matter does not require the court to defer to the agency's interpretation of CT Page 2228 statutory text. Burinskas, 240 Conn. at 147. There, the Supreme Court noted that where "as in this case" the construction of a statute has not been subjected to judicial scrutiny or to a governmental agency's time-tested interpretation, such construction "constitutes a question of law for which deference is not warranted." Burinskas, 240 Conn. at 147 (citing TexacoRefining Marketing Co. v. Commissioner of Revenue Services,202 Conn. 583.599 (1987) and Connecticut Alcohol Drug AbuseCommission v. Freedom of Information Commission, 333 Conn. 28,41-42 (1995). Burinskas, which interpreted the very same federal statute and state regulations which are at issue here, was decided on March 18, 1997, less than one month before the fair hearing concerning the Burkes. As the Department's attorney noted at oral argument on the Burkes' appeal to this court, the "hearing officer's, for example, discussion section in her memorandum of decision does not suggest that one way or another she was aware of Burinskas." Transcript of November 16, 1998, at 25. Accordingly, at the time of the fair hearing, the Department evidently was not then clearly aware that it was dealing with a statute to which this state's highest court had provided judicial scrutiny, nor had the Department itself provided a "time-tested interpretation." Under the circumstances, the traditional deference to the agency's interpretation is not warranted here.
Standard for Allocation of Assets
As Burinskas noted, the purpose of 42 U.S.C. § 1396r-5, the Medicaid Catastrophic Care Act ("Catastrophic Care Act") is, in part, to ease the financial burden placed on a "community spouse," defined as an individual who resides in the community and whose spouse resides in a medical facility or long-term facility. Burinskas, 240 Conn. at 148. A significant goal was to avoid requiring the "institutionalized spouse to spend down a large portion of the couple's resources, and thus impoverish the community spouse, before becoming eligible for Medicaid." Id.
at 149.
Thus, under the Catastrophic Care Act the community spouse is entitled to an MMNA; if his income is insufficient to meet his MMNA, this deficit can be bridged by transferred of income from the institutionalized spouse. Id. Also, if the transferred income is insufficient, the community spouse may apply for an increase in his resource allowance to fund his MMNA. Id. The value of the institutionalized spouse's resources are diminished by any transfer to the community spouse, bringing the former closer to CT Page 2229 Medicaid eligibility. Id. at 149-150.
Mr. Burke seeks an increase in his MMNA claiming that he established, at the fair hearing, a need for additional income "due to exceptional circumstances resulting in significant financial duress." 42 U.S.C. § 1396r-j(e)(2)(B). See also Uniform Policy Manual (1989) § 1570.25. pp. 3 and 4. If so, the Department was legally obligated to substitute "an amount adequate to provide such additional income as is necessary."42 U.S.C. § 1396r-5(e)(2)(B)
The hearing officer here specifically found that Mr. Burke's blindness was an exceptional circumstance and thus met that statutory criterion. However, the hearing officer apparently misunderstood Mr. Burke's presentation at the hearing since she found that he "did not claim any extraordinary expenses," based apparently on his representative's written memorandum which was presented at the hearing. Finding, para. 9. This finding ignored the Act that Mr. Burke's blindness necessitated additional care (as orally pointed out by his counsel at the hearing). including meal preparation, supervision and transportation to medical appointments. The costs for these essential services were "bundled" into Mr. Burke's rent at the assisted living facility. They went unchallenged as legitimate living expenses, and, indeed, were apparently found by the hearing officer to be components of his "excess monthly shelter costs." Finding, para. 7.
The Burkes' substantive rights were prejudiced by the Department's decision. It is incongruous to find, on the one hand, that Mr. Burke's blindness is an exceptional circumstance. but on the other hand, that "it does not result in significant financial duress" when his excess monthly shelter costs evidently derive from his inability to live independently in the community due to his blindness. Except for the reference to the appellant's representative's memorandum, the findings are devoid of analysis as to why this conclusion was reached. In view of all the evidence, the Department's decision was not reasonable, was apparently arbitrary, and abused its discretion. The conclusion that no "significant financial duress" resulted from the exceptional circumstance is an incorrect application of the law to the evidence as presented. It does not reasonably and logically follow from the facts. It is both affected by error of law and clearly erroneous in view of the evidence on the whole record. See Conn. Gen. Stat. § 4-183 (j). Accordingly, the CT Page 2230 Department's decision cannot stand.
On remand, the parties should address in more detail whether each of the individual expenses which are "bundled" at the assisted facility derive from Mr. Burke's exceptional circumstances, which have been conclusively established. As the Supreme Court has stated the issues concerning "significant financial duress" and cognizable needs under the statute "fall within the hearing officer's province on remand." Burinskas,240 Conn. at 153-154, n. 17.
In addition, on remand, the hearing officer should correctly review and accurately set forth the spousal assets. According to the Department a mistake was made by the hearing officer in ignoring "a clear notation on a bank statement filed by the plaintiff describing . . . a $10,000 loan to a daughter-in-law" resulting in prejudice to Mr. Burke by undervaluing his protected amount. Deft. Mem. at 11. Likewise, another $10,000 gift may have had "a negative impact on the [Medicaid] eligibility date also." Id. This should be considered on remand as well.[4]
Claim for Award of Fees and Costs
If a hearing officer's determination is not supported by "any substantial justification," it is within the trial court's discretion to award attorney's fees. Burinskas, 240 Conn. at 154, citing Connecticut General Statutes § 4-184a(b). "Without any substantial justification" has been interpreted by our Supreme Court to mean "entirely unreasonable or without any reasonable basis in law or fact." Burinskas, 240 Conn. at 156. This was termed a "demanding standard." Id.
Here, as in Burinskas the "hearing officer's misapplication of the exceptional circumstances flowed in part from the manner in which the plaintiffs couched their claims at the fair hearing."Id. Although corrected in oral presentation at the hearing, the Burkes' written submission did state that Mr. Burke was not claiming any extraordinary expenses. Memorandum at para. 7. Record at 32. Also, the Burkes' presentation could have more clearly articulated how the assisted living facility expenses incurred due to Mr. Burke's blindness created a financial hardship.
Accordindly, as in Burinskas the misapplication by the hearing officer was not entirely unreasonable or without any CT Page 2231 reasonable basis in law or in fact. The court may not award attorney's fees "simply on the basis of legal error." Burinskas
at 157. The request for an award of attorney's fees and costs is therefore denied.
Conclusion
The appeal is sustained in part and the Department's Motion for Judgment of Remand is granted as follows:
The Hearing officer's decision is reversed and the Burkes' application is remanded to the Department for a new fair hearing in accordance with state and federal law. On remand, Mr. Burke's exceptional circumstances, having been conclusively established, will not be at issue. The issues to be addressed and determined on remand are to include, without limitation:
 1. Review of and corrected calculations of the spousal assets as of October, 1996 for the purposes of determining the total spousal assessment, including (a) correcting Mr. Burke's monthly gross income as of October. 1996, and (b) correcting the resulting calculations flowing from the determination of his monthly income.
 2. A review of Mr. Burke's living expenses at the assisted living facility and a determination as to which of them amount to significant financial duress stemming from his blindness.
 3. The appropriate revised Mimmum Monthly Needs Allowance (MMNA)
 4. The appropriate revised Community Spouse Protected Amount (CSPA).
 5. The correct date as of which Mrs. Burke became Medicaid eligible.
The request for an award of attorney's fees and costs is denied.
Shapiro, J.