[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiffs, Leon LaBrie and Margaret Cleverdon, husband and wife, from the decision of the Department of Social Services ("the department"), denying Cleverdon's application for long-term care assistance under the medicaid program, Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. The plaintiffs' appeal is taken pursuant to General Statutes § 17b-65 and § 4-183 of the Uniform Administration Procedure Act ("UAPA").
The plaintiffs are Medicare Catastrophe Coverage Act spouses.42 U.S.C. § 1396r-5. Medicare Catastrophe Coverage Act spouses are a medicare couple, one of whom becomes institutionalized and is known as the "institutionalized spouse" and the other of whom continues to reside in the community and is known as the "community spouse." See also Uniform Policy Manual ("UPM") § 1500.01. In this case, Cleverdon is the institutionalized spouse and LaBrie is the community spouse.
On February 11, 2000, Cleverdon began a continuous period of institutionalization. (Return of Record ("ROR"), Volume I, p. 11.) On November 27, 2000, Cleverdon submitted an application for medicaid long-term care benefits to the department. (ROR, Volume I, pp. 11, 28-39.)
On March 16, 2001, the department completed an assessment of spousal assets and determined that as of the date of institutionalization the total value of the assets owned by the plaintiffs was $397,400.08. (ROR, Volume I, pp. 11, 26.) The medicaid asset limit is $1600. UPM § 4005.10(2). Cleverdon was therefore found ineligible for Title XIX benefits, and the application was denied because her assets exceeded the medicaid asset limit. The plaintiffs then requested a fair hearing. (ROR, Volume I, p. 12.) After the hearing, a decision was issued on June 6, 2001, a reconsideration was requested, and a revised decision was issued on August 29, 2001. The August 29, 2001 decision found that as of February 11, 2000, the date of institutionalization, the total value of the assets owned by the plaintiffs was $348,349.65. Pursuant to UPM § 4022.05(B)(2), Labrie's share of these assets was $84,120. (ROR, Volume I, p. 12.)
As of December 12, 2000, the plaintiffs' total income-producing assets of $210,957.20 generated interest income in the amount of $1095 per month. Labrie's share of these assets ($84,120, or 40 percent) generated interest income in the amount of $438 per month. (ROR, Volume I, p. 12.) CT Page 3926 Labrie had total gross monthly income in the amount of $1438 ($471 from his pension and $967 from social security). (ROR, Volume I, p. 12.) Cleverdon had total gross monthly income in the amount of $1,356.95 ($593.95 from her pension and $763 from social security). (ROR, Volume I, p. 12.)
Labrie had a monthly shelter cost which amounted to $1895. This shelter cost was comprised of a monthly rental payment ($1600), homeowners insurance ($8) and a standard utility allowance ($287). (ROR, Volume I, p. 12.) Labrie was entitled to a monthly shelter deduction (30 percent of 150 percent of the federal poverty level for two) in the amount of $421.87. (ROR, Volume I, p. 12.) Labrie had an excess shelter cost in the amount of $1,473.12. (ROR, Volume I, p. 12, ¶¶ 10, 11.) As of July 1, 2000, the income allowed for a household of two, based on 150 percent of the federal poverty level was $1,406.25. UPM § 5035.30(B)(2)(b) (3).
The hearing officer determined that Labrie did not have any exceptional circumstances resulting in significant financial duress. (ROR, Volume I, p. 13.) His monthly excess shelter cost ($1,473.13) plus the 150 percent of the federal poverty level for a household of two ($1,406.25) equaled $2,879.38. (ROR, Volume I, p. 13.) As of January 1, 2000, the maximum a community spouse may receive if no exceptional circumstances resulting in significant financial duress exist is $2103. UPM § 5035.30(B)(5) (a). Labrie's monthly maintenance needs allowance was $2103, ROR, Volume I, p. 13, ¶¶ 14, 15, 16, which exceeds his monthly income and the monthly interest income generated by the assets he owns ($1876) by $227. (ROR, Volume I, p. 13; ¶¶ 7, 8, 17.)
As of January 1, 2000, the maximum community spouse disregard not established through a fair hearing decision was $84,120. (ROR, Volume I, p. 13; UPM § 4022.05(B)(2).) The hearing officer determined that Labile was eligible for a community spouse protected amount of $127,853. (ROR, Volume I, p. 13.) The hearing officer further determined that Labrie was ineligible for a community spouse allowance. (ROR, Volume I, p. 13.) Cleverdon's assets exceeded the medicaid program's $1600 asset limit. (ROR, Volume I, p. 13.) As a result, the hearing officer determined that Cleverdon was ineligible for long-term care assistance under the medicaid program. (ROR, Volume I, p. 13.) The essence of this finding was that, other than the $227 to meet Labrie's monthly maintenance needs allowance, the department determined that it did not have to provide for additional funds. Cleverdon's assets exceeded the medicaid program's asset limit and Labde did not qualify for a further transfer.
Thereafter, the plaintiffs jointly appealed the decision of the fair CT Page 3927 hearing officer. The plaintiffs are aggrieved because the department has denied them medicaid benefits by failing to allocate further assets or income to the community spouse.
The UAPA governs judicial review of an administrative agency decision. Under General Statutes § 4-183 (j), such review is limited to whether the agency, in light of the evidence before it, acted unreasonably, arbitrarily, illegally, or in abuse of its discretion in reaching its decision. Burinskas v. Dept. of Social Services, 240 Conn. 141, 146-47
(1997); Connecticut Alcohol Drug Abuse Commission v. FOIC, 233 Conn. 28,39 (1985); Ottochian v. Freedom of Information Commission, 221 Conn. 393,397 (1992); Griffin Hospital v. Commission on Hospitals Health Care,200 Conn. 489, 495-96, appeal dismissed, 479 U.S. 1023, 107 S.Ct. 781,93 L.Ed.2d 819 (1986). Section 4-1836) provides that: "[t]he court shall not substitute its judgment for that of the agency as I to the weight of the evidence on questions of fact." Consequently, the court's function in reviewing factual questions is not to retry the case. Ottochian v.Freedom of Information Commission, supra, 397; All Brand Importers, Inc.v. Department of Liquor Control, 213 Conn. 184, 192-93 (1989). The question is not whether the court would have reached the same conclusion, but whether the record before the agency supports the action taken. Ottochian v. Freedom of Information Commission, supra, 397; AllBrand Importers, Inc. v. Department of Liquor Control, supra, 192-93.
Even as to questions of law, the court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. Therefore, the agency's legal conclusions must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. Burinskas v. Dept. of Social Services, supra, 240 Conn. 147;Connecticut Alcohol Drug Abuse Commission v. FOIC, supra, 233 Conn. 39.
Section 1396r-5 of 42 U.S.C. mandates that the department take several steps when a married couple applies for medicaid benefits to cover the care of an institutionalized spouse. First, the department must calculate the total value of the couple's resources and allocate a share of the resources to each spouse. 42 U.S.C. § 1396r-5 (c)(1); UPM § 1507.05; Burinskas v. Dept. of Social Services, supra, 240 Conn. 149;O'Callaghan v. Commissioner of Social Services, 53 Conn. App. 191, 196
(1999). Under federal medicaid terminology, the amount allocated to the community spouse is called the community spouse resource allowance.Burinskas v. Dept. of Social Services, supra, 149; O'Callaghan v.Commissioner of Social Services, supra, 196. Under state medicaid terminology, this amount is called the community spouse's protected amount UPM §§ 1500.01, 4000.01. The department must exclude the CT Page 3928 community spouse's protected amount in determining the couple's financial eligibility for medical assistance and the amount is not required to be spent for the institutionalized spouse's case. Burinskas v. Dept. ofSocial Services, supra, 149.
The department must also determine the community spouses's "minimum monthly maintenance needs allowance". 42 U.S.C. § 1396r-5 (d)(3);Burinskas v. Dept. of Social Services, supra, 240 Conn. 149-150;O'Callaghan v. Commissioner of Social Services, supra, 53 Conn. App. 197. The corresponding medicaid terminology in Connecticut is the "monthly maintenance needs allowance". UPM § 5035.30(B)(2). The department uses his monthly maintenance needs allowance as the level of income estimated as necessary to permit the community spouse to live independently. 42 U.S.C. § 1396r-5 (d)(3)(B); Burinskas v. Dept. ofSocial Services, supra, 149 n. 9; O'Callaghan v. Commissioner of SocialServices, supra, 197.
The monthly maintenance needs allowance is initially derived from the income generated from the community spouse protected amount in addition to any other income the community spouse may receive, such as social security. 42 U.S.C. § 1396r-5 (d)(3); UPM § 5035.30(B)(2). If these sources of income are insufficient to meet the community spouse's monthly maintenance needs allowance, the deficit may be bridged by transferring income from the institutionalized spouse to the community spouse. 42 U.S.C. § 1396r-5 (d)(1)(B) and (d)(2). The community spouse may apply for an increase in his community spouse protected amount, if the income transferred from the institutionalized spouse is insufficient to fund his monthly maintenance needs allowance.42 U.S.C. § 1396r-5 (e)(2)(C); Burinskas v. Dept. of SocialServices, supra, 240 Conn. 149. Increasing the community spouse protected amount through a transfer of resources from the institutionalized spouse to the community spouse brings the value of the institutionalized spouse's resources closer to the eligibility level. Id., 149-50.
The community spouse may obtain an increase in his monthly maintenance needs allowance by establishing a need to increase income "due to exceptional circumstances resulting in significant financial duress" at a fair hearing. 42 U.S.C. § 1396r-5 (e)(2)(B); UPM § 1570.25. The state must also provide for an "excess shelter allowance" if necessary to cover, inter alia, unusually high rent or mortgage payments.42 U.S.C. § 1396r-5 (d)(3)(A) (ii), 1396r-5(d)(4). Either spouse may request a hearing to seek a higher minimum monthly maintenance needs allowance for the community spouse; such an increase will be allowed if the couple establishes "exceptional circumstances resulting in significant financial duress." 42 U.S.C. § 1396r-5 (e)(2)(B); seeWisconsin Department of Health and Services v. Blumer, 534, 70 CT Page 3929 U.S.L.W. 4139, 4141 n. 2 (February 20, 2002). The increase in the monthly maintenance needs allowance requires a transfer of additional assets from the institutionalized spouse to meet the needed income of the community spouse. This results in a further reduction of the institutionalized spouse's assets bringing them closer to the eligibility level.
In their brief, the plaintiffs argue that Labrie's exceptional circumstances result from the combined effects of his age, infirmities with accompanying uninsured medical expenses and, the fact that, to have frequent contact with his wife, he maintains his apartment in part of the same corporate complex as the convalescent home where his wife is a patient. In particular, the plaintiffs argue that the resulting excess shelter cost in the amount of $1,473.13 per month constitutes significant financial duress. (Plaintiffs' Brief, p. 3.) They further contend that the hearing officer addressed only the uninsured medical expense and found it insufficient to constitute exceptional circumstances. (Plaintiffs' Brief p. 3.)
The Medicare Catastrophe Coverage Act and UPM § 1570.25(D)(3) require that, to be exceptional, a circumstance must be such as places an unusual demand on the resources of the community spouse. The Medicare Catastrophe Coverage Act conference report (H.R. Rep. # 661, 100 Congress 2d Sess. 261 (1988)) noted that "Exceptional circumstances resulting in significant financial duress would include, but not be limited to the financial burden of caring for a disabled child, sibling or immediate relative." Genser v. Thomas, Superior Court, judicial district of New Britain, Docket No. 492635 (January 10, 2000, MeWeeny, J.)
As Genser states, while the examples of exceptional circumstances noted in the conference report are not exhaustive, they are consistent with the determination that the symptoms typical of the normal process of human aging are not "exceptional circumstances."
At the hearing, Labrie testified that he moved to an apartment at the Creamery Brook Retirement Village to live within walking distance of his wife's convalescent home. (ROR, Volume II, p. 98.) The administrative record indicates that Labrie failed to demonstrate how the combined effects of his age and his need to live near his wife constituted an extraordinary circumstance that threatened his independence or his ability to conduct the basic activities of daily living.
No exceptional circumstance was presented by Labrie to indicate that his living in the same corporate complex as his wife in order to have frequent contact with her was required. Labrie testified that he visited his wife frequently because she could still function, suggesting that the purpose of his visits was companionship. There was no evidence in the CT Page 3930 record that he required help with cooking or other daily living needs.
In the absence of evidence tending to show that the community spouse's circumstances were such that he could not live independently on the statutory monthly maintenance needs allowance, the hearing officer correctly found that he did not have exceptional circumstances resulting in significant financial duress. The hearing officer's denial of the couple's application to transfer some of the institutionalized spouse's income and entire assets to the community spouse, and thus avoid contributing their fair share to the institutionalized spouse's care, was derived from the correct application of the law to the facts found and followed reasonably and logically from those facts. See Genser v.Thomas, supra, Superior Court, Docket No. 492635. The court concludes that the hearing officer applied the correct standard. Therefore, the plaintiffs' appeal is dismissed.
Henry S. Cohn, Judge