[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal from a final decision of the defendant, Connecticut Medical Examining Board ("board"), sanctioning the plaintiff, a medical doctor, for failing to meet the standard of care required of physicians in Connecticut with respect to the care and treatment of a patient that he had prescribed ritalin for and failed to monitor properly. This appeal is brought pursuant to the Uniform Administrative Procedure Act ("UAPA"), General Statutes §§ 4-166 et seq. and 4-183. The plaintiff is aggrieved by the decision of the board, requiring him to pay a civil penalty in the amount of $4500.
At the outset, the court notes the standard of review governing appeals from administrative agency decisions under the Uniform Administrative Procedure Act ("UAPA"). Pursuant to General Statutes § 4-183 (j), the court's review is limited to whether the agency, in light of the evidence before it, acted unreasonably, arbitrarily, illegally or in abuse of its discretion in reaching its decision. Burinskas v. Dept. of SocialServices, 240 Conn. 141, 146-47 (1997); Connecticut Alcohol DrugAbuse Commission v. FOIC, 233 Conn. 28, 39 (1995); Ottochian v. Freedomof Information Commission, 221 Conn. 393, 397 (1992); Griffin Hospitalv. Commission on Hospitals Health Care, 200 Conn. 489, 495-96
(1986). General Statutes § 4-183 (j) provides that: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." It is not the court's function to retry the case.
As to questions of law, the court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. Therefore, the agency's legal conclusions must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. Burinskas v.Dept. of Social Services, supra, 240 Conn. 147; Connecticut AlcoholCT Page 2283 Drug Abuse Commission v. FOIC, supra, 233 Conn. 39.
On November 3, 2000, the Department of Public Health ("department") filed a statement of charges against the plaintiff with the board alleging that the plaintiff violated General Statutes § 20-13c et seq. for failure to properly monitor a patient he was treating with ritalin for Attention Deficit Disorder ("ADD"). (Return of Record ("ROR"), Vol. I, p. 12.) On January 8, 2001, the plaintiff filed an answer to the statement of charges, denying that his treatment of the patient was inappropriate. (ROR, Vol. I, p. 18.) On April 5 and July 26, 2001, a panel of the board, consisting of Donald Grayson, M.D., Roberto Medina, M.D. and Denise Ward, RPT, conducted hearings on the allegations contained in the charges and subsequently submitted a proposed final decision for the consideration of the full board. After argument, the board found that on December 21, 1987, the patient, who was then a minor, complained of pain in his arm sustained in a fall. The plaintiff referred the patient to an orthopedic doctor but continued to treat him intermittently from 1987 to 1995. On July 22, 1997, the patient, who was then 21 years of age, complained to the plaintiff that he was having difficulty with reading, studying, organizing and finishing his work. The plaintiff diagnosed him with ADD and prescribed 20 milligrams of ritalin once a day for fourteen days. (ROR, Vol. I, p. 4.) On August 4, 1997, the plaintiff saw the patient for a follow-up visit, and the patient reported improvement. On October 6, 1997, the patient reported to the plaintiff by telephone that he was continuing to improve without any side effects from the ritalin. The plaintiff properly increased the patient's medication to 20 milligrams twice a day and prescribed it on seven more occasions from October 6, 1997 until August 27, 1998. From August 27, 1998 through January 29, 1999, after speaking with the patient, the plaintiff prescribed ritalin on seven more occasions maintaining the same dosage. On February 23, 1999, after a telephone conversation, this dosage was increased to three tablets per day. After seeing the patient on March 2, 1999, the plaintiff formalized the ritalin dosage to 20 milligrams three times a day. At that time, the plaintiff noticed that the patient looked tired but failed to see any signs of drug abuse. On June 4, 1999, the last prescription for ritalin was prescribed but was not picked up because the patient died.[1]
Based on the allegations that the plaintiff failed to properly monitor his patient and that his failure to do so constituted grounds for disciplinary action, the board found that the standard of care required the plaintiff to see his patient at least once every six to twelve months. It found that the plaintiff saw his patient a total of three times in a period of three years with a nineteen-month hiatus between the last two visits. (ROR, Vol. I, p. 5.) The board also found that plaintiff CT Page 2284 failed to confer with a health care professional at the Student Health Center Services at the University of South Carolina where the patient was attending college. (ROR, Vol. I, p. 6.)
Essentially, the plaintiff claims in this appeal that there is no generally accepted standard of care requiring the plaintiff to see his patient, who he is prescribing medication for, at least once every six to twelve months and to consult with the patient's health care providers at the patient's school infirmary. (ROR, Vol. I, p. 6.) The board contends that it can make the determination based on its own expertise and attested to this in their memorandum of decision. (ROR, Vol. I, p. 3.) The board also attested that they relied on their expertise in evaluating the evidence. (ROR, Vol. I, p. 3.)
As long as the board hearing and deciding a licensing matter is composed of at least a majority of experts, as in the present case, the board may rely on its own expertise in evaluating charges against persons licensed by the board as well as the requisite standard of care by which to judge such cases. Levinson v. Board of Chiropractic Examiners,211 Conn. 508 (1989). The board is comprised of fifteen members. Of these, nine are physicians and one is a physician assistant. The nine physicians include: five practicing physicians; one physician who is a full-time member of the faculty of the University of Connecticut School of Medicine; one physician who is registered as a supervising physician for one or more physician assistants; one physician who is a full-time chief of staff at a Connecticut general-care hospital; and, one physician who is a graduate of a medical education program accredited by the American Osteopathic Association. See General Statutes § 20-8a (a). All the members are required to be current in developments in medicine.
At the hearing, the plaintiff's expert testified that although he was flexible with college students he saw them once every six months or at least once a year.
The board is required to hear and consider proffered testimony from experts but the board is not bound by such evidence. Pet v. Department ofHealth Services, 228 Conn. 651, 666 (1994). The standard of professional care that the Medical Examining Board applied was correctly based on their interpretation of General Statutes § 10-13c (4). The board's responsibility is made all the more significant in that the plaintiff was supposed to be monitoring a stimulant and addictive substance that is "a controlled substance" given high priority under General Statutes §21a-243.
While the plaintiff is correct in asserting that there is no clearly CT Page 2285 defined standard etched in medical treatises as to how often a physician is required to actually observe a patient who has been prescribed ritalin, this does not mean that a medical board, comprised mainly of physicians, hearing the testimony of experts cannot set standards of professional care based on their interpretation of what is required by statute.
Clearly, the action of the board was neither contrary to law nor an abuse of discretion.
Accordingly, the plaintiff's appeal is hereby dismissed.
Owens, J.