ANN O'CALLAGHAN v. COMMISSIONER OF
SOCIAL SERVICES
(AC 16870)

O'Connell, C. J., and Lavery and Landau, Js.

---

Argued December 3, 1998—officially released May 11, 1999

*Maite Barainca*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellant (defendant).

*George B. Bickford*, with whom was *Neil W. Kraner*, for the appellee (plaintiff).

*Opinion*

LAVERY, J. The defendant commissioner of social services appeals from the judgment of the trial court

rendered in favor of the plaintiff, Ann O'Callaghan.[1] As a threshold matter, we conclude that the plaintiff's death during the pendency of this administrative appeal did not render the appeal moot because there is practical relief that we can grant to the parties. The dispositive issue on appeal is whether, pursuant to 42 U.S.C. § 1396r-5 (e) (2) (C),[2] the defendant should have allocated to the plaintiff's community spouse resource allowance (resource allowance) certain spousal resources that generated only capital gains at the time that the plaintiff's husband was institutionalized. Such allocation would allow the plaintiff to generate her minimum monthly maintenance needs allowance (minimum needs allowance).[3] The defendant claims that the trial

---

[1] Although the plaintiff, Ann O'Callaghan, is deceased, we refer to her as the plaintiff in this opinion. By an order dated October 15, 1997, we granted the motion of Sheila O'Callaghan Lamo, executrix of the plaintiff's estate, to be substituted as party plaintiff.

[2] Section 1396r-5 (e) (2) (C) of title 42 of the United States Code provides: "Revision of community spouse resource allowance

"If either such spouse establishes that the community spouse resource allowance (in relation to the amount of income generated by such an allowance) is inadequate to raise the community spouse's income to the minimum monthly maintenance needs allowance, there shall be substituted, for the community spouse resource allowance under subsection (f) (2) of this section, an amount adequate to provide such a minimum monthly maintenance needs allowance."

[3] In the present case, we are called on to determine only whether the defendant, in adjusting the plaintiff's resource allowance pursuant to § 1396r-5 (e) (2) (C), properly determined that the spousal resources in question could not be allocated to the resource allowance. In adjusting the plaintiff's resource allowance, the defendant looked to the resources of the plaintiff's husband. The issue of whether the defendant, in adjusting the resource allowance, should have looked first to the income or to the resources of the plaintiff's husband is not properly before us. Therefore, we express no opinion concerning whether the defendant should have utilized a "resource first," "income first," or hybrid methodology. See *Cleary* v. *Waldman*, 959 F. Sup. 222, 229–30 (D. N.J. 1997) (discussing three methodologies of revising resource allowance); *Kimnach* v. *Dept. of Human Services*, 96 Ohio App. 3d 640, 644, 645 N.E.2d 825 (1994), appeal denied sub nom. *In re Kimnach*, 71 Ohio St. 3d 1447, 644 N.E.2d 409 (1995) (resource first approach); *Golf* v. *Dept. of Social Services*, 91 N.Y.2d 656, 662–63, 674 N.Y.S.2d 600, 697 N.E.2d 555 (1998) (income first approach).

court improperly determined that the resources in question were income producing within the meaning of § 1396r-5 (e) (2) (C). We conclude that the trial court improperly determined that those resources generated income. As an alternative ground for affirming the decision of the trial court, the plaintiff claims that the defendant should have authorized the conversion of the resources into income producing resources and allocated to her resource allowance an amount of the converted resources sufficient to enable her to generate her minimum needs allowance. We agree with the plaintiff and conclude that, pursuant to § 1396r-5 (e) (2) (C), the defendant should have authorized a conversion of the resources and allocated to the resource allowance an amount of the converted resources sufficient to enable the plaintiff to generate her minimum needs allowance.

Prior to a recitation of the facts and procedural history of this appeal, it is necessary to provide a brief overview of the relevant federal medicaid laws and corresponding state regulations. Our Supreme Court has referred to this statutory scheme as a " 'Serbonian bog.' "[4] *Ross* v. *Giardi*, 237 Conn. 550, 554, 680 A.2d 113 (1996); see *Friedman* v. *Berger*, 409 F. Sup. 1225, 1226 (S.D.N.Y.) (describing statutory scheme as "aggravated assault on the English language, resistant to attempts to understand it"), aff'd, 547 F.2d 724 (2d Cir. 1976), cert. denied, 430 U.S. 984, 97 S. Ct. 1681, 52 L. Ed. 2d 378 (1977). "The medicaid program, established in 1965 as Title XIX of the Social Security Act, and codified at 42 U.S.C. § 1396 et seq., is a joint federal-state venture providing financial assistance to persons whose income and resources are inadequate to meet the costs of necessary medical care. . . . States participate voluntarily in the medicaid program, but participating states must develop a plan, approved by the

___

[4] "See John Milton, Paradise Lost, bk. 2, l. 592 ('A gulf profound, as that Serbonian bog Betwixt Damiata and Mount Casius old, Where armies whole have sunk.')." *Matarazzo* v. *Rowe*, 225 Conn. 314, 318 n.3, 623 A.2d 470 (1993).

secretary of health and human services, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance . . . . Connecticut has elected to participate in the medicaid program and has assigned to the department [of social services] the task of administering the program. General Statutes [§ 17b-260]. . . . The department, as part of its uniform policy manual, has promulgated regulations governing the administration of Connecticut's medicaid system. See General Statutes § 17b-260." (Citations omitted; internal quotation marks omitted.) *Burinskas* v. *Dept. of Social Services*, 240 Conn. 141, 148, 691 A.2d 586 (1997).

In 1988, Congress enacted the Medicare Catastrophic Coverage Act of 1988 (MCCA). Pub. L. No. 100–360, 102 Stat. 683 (1988), codified at 42 U.S.C. § 1396r-5. "The objective of the MCCA was to protect married couples when one spouse is institutionalized in a nursing home, so that the spouse who continues to reside in the community is not impoverished and has sufficient income and resources to live independently. See H.R. Rep. No. 100–105 (II), 100th Cong., 2d Sess. at 65 (1988), reprinted in 1988 U.S.C.C.A.N. 857, 888. Prior to 1988, Medicaid eligibility rules required couples to deplete their combined resources before the institutionalized spouse[5] was eligible for benefits, often leaving the community spouse[6] financially vulnerable. The MCCA

---

[5] "The term 'institutionalized spouse' means an individual who—

"(A) is in a medical institution or nursing facility or who (at the option of the State) is described in section 1396a (a) (10) (A) (ii) (VI) [42 USCS § 1396a (a) (10) (A) (ii) (VI)], and

"(B) is married to a spouse who is not in a medical institution or nursing facility;

"but does not include any such individual who is not likely to meet the requirements of subparagraph (A) for at least 30 consecutive days." 42 U.S.C. § 1396r-5 (h) (1); see Department of Income Maintenance, Uniform Policy Manual (1989) § 4000.01. In this case, the plaintiff's husband, Peter O'Callaghan, is the institutionalized spouse.

[6] "The term 'community spouse' means the spouse of an institutionalized spouse." 42 U.S.C. § 1396r-5 (h) (2); see Department of Income Maintenance,

attempted to strike a balance between preventing impoverishment of the community spouse by excluding minimum amounts of resources and income for that spouse from eligibility considerations, and preventing a financially solvent institutionalized spouse from receiving Medicaid benefits by ensuring that income was not completely transferred to the community spouse." *Chambers* v. *Dept. of Human Services*, 145 F.3d 793, 798 (6th Cir.), cert. denied, 525 U.S. 964, 119 S. Ct. 408, 142 L. Ed 2d 331 (1998); see *Burinskas* v. *Dept. of Social Services*, supra, 240 Conn. 148–49.

For purposes of determining if a married applicant is eligible to receive medicaid benefits, the defendant will calculate the total value of the couple's resources[7] as of the date of the applicant's institutionalization and allocate a share of the resources to each spouse. 42 U.S.C. § 1396r-5 (c) (1); Department of Income Maintenance, Uniform Policy Manual (1989) § 1507.05 (Uniform Policy Manual); *Thomas* v. *Commissioner of the Division of Medical Assistance*, 425 Mass. 738, 740, 682 N.E.2d 874 (1997). "For purposes of determining eligibility, the amount [of resources] allocated to the community spouse is called the community spouse resources allowance . . . ."[8] 42 U.S.C. § 1396r-5 (c) (2) (B)." *Thomas* v. *Commissioner of the Division of Medical Assistance*, supra, 740. The resource allowance is the greatest of (1) $12,000 (adjusted annually), (2) the lesser of one half of total joint resources or $60,000

---

Uniform Policy Manual (1989) § 4000.01. In the present case, the plaintiff is the community spouse.

[7] Section 1396r-5 (c) (5) of title 42 of the United States Code excludes certain assets from the definition of "resources." "In particular, 'resources' does not include the marital home, household goods, personal belongings, the value of a burial space, and a limited amount of the value of an automobile and funds for burial expenses. See 42 U.S.C. § 1382b (a) and (d)." *Thomas* v. *Commissioner of the Division of Medical Assistance*, 425 Mass. 738, 740 n.4, 682 N.E.2d 874 (1997).

[8] In the Uniform Policy Manual, the resource allowance is called the "community spouse protected amount."

(adjusted annually), (3) an amount established pursuant to a fair hearing under § 1396r-5 (e) (2), or (4) an amount transferred under court order. 42 U.S.C. § 1396r-5 (f) (2) (A); *Thomas* v. *Commissioner of the Division of Medical Assistance*, supra, 740–41. "The resource allowance is protected from the institutionalized applicant's health care obligations and does not count against the applicant's financial eligibility. In addition, under the [MCCA], a community spouse is entitled to a 'minimum monthly maintenance needs allowance' . . . .[9] 42 U.S.C. § 1396r-5 (d) (3); Uniform Policy Manual (1992) § 5035.30 (B) (2)." *Burinskas* v. *Dept. of Social Services*, supra, 240 Conn. 149. The minimum needs allowance "is an amount that ensures that the community spouse has income significantly above the poverty level." *Chambers* v. *Dept. of Human Services*, supra, 145 F.3d 798. Effective July 1, 1992, the minimum needs allowance is equal to 150 percent of the official poverty line, plus an additional shelter allowance. 42 U.S.C. § 1396r-5 (d) (3) (B); *Burinskas* v. *Dept. of Social Services*, supra, 240 Conn. 149 n.9.

If either spouse is dissatisfied with the defendant's determination of the resource allowance, that spouse is entitled to a fair hearing. 42 U.S.C. § 1396r-5 (e) (2) (A) (v). "The statutory provision for revising the community spouse resource allowance is set out in 42 U.S.C. § 1396r-5 (e) (2) (C)." *Chambers* v. *Dept. of Human Services*, supra, 145 F.3d 798; see also Uniform Policy Manual (1989) § P–1570.30 (outlining procedure for hearing officer to adjust resource allowance).

The following facts and procedural history are relevant to a resolution of this appeal. On November 17, 1994, the plaintiff's husband began a period of continuous institutionalization at Hill Haven Nursing Home in Windsor. The plaintiff remained in the couple's home.

[9] In the Uniform Policy Manual, the minimum needs allowance is called the "minimum monthly needs allowance."

On December 30, 1994, the plaintiff filed an application on behalf of her husband for medicaid benefits. The defendant determined that, as of November 17, 1994, the date of institutionalization, the couple's resources totaled $188,032.11. The defendant allocated $74,820 in resources to the plaintiff's resource allowance and transferred the remainder to the plaintiff's husband. The defendant denied the plaintiff's husband's medicaid application because his resources exceeded the eligibility limit of $1600. See Uniform Policy Manual (1993) § 4005.10 (A) (2) (a).

The plaintiff timely requested an administrative hearing because she was dissatisfied with the defendant's assessment of the spousal resources and the denial of her husband's application. After an administrative hearing, the hearing officer determined that the plaintiff's minimum needs allowance was $1809.75 and that the plaintiff received gross monthly income of $418.25. The hearing officer found that the plaintiff's monthly income of $418.25 was insufficient to provide her minimum needs allowance of $1809.75. In an effort to help the plaintiff reach her minimum needs allowance, the hearing officer transferred to the plaintiff's resource allowance $28,363.26 in income producing resources from her husband's resources of $113,212.11. As a result, the plaintiff's adjusted resource allowance totaled $103,183.26 and her husband retained resources of $84,848.85.

Relying on Department of Health and Human Services, Health Care Financing Administration, State Medicaid Agency Regional Bulletin No. 93-21, dated March 17, 1993 (Medicaid Bulletin No. 93-21), the hearing officer concluded that she could not allocate any portion of the $84,848.85 in resources to the plaintiff's resource allowance because those resources did not generate income at the time the plaintiff's husband was institutionalized. "The statutory provision for revising the

community spouse resource allowance is set out in 42 U.S.C. § 1396r-5 (e) (2) (C)"; *Chambers* v. *Dept. of Human Services,* supra, 145 F.3d 798; and Medicaid Bulletin No. 93-21 clarified the scope of a hearing officer's authority to adjust the resource allowance pursuant to § 1396r-5 (e) (2) (C). The record demonstrates, and neither party disputes, that the $84,848.85 in resources, which are the focus of this appeal, generated only capital gains at the time the plaintiff's husband was institutionalized. The hearing officer also affirmed the defendant's denial of the plaintiff's husband's application because his resources exceeded the medicaid eligibility limit.

Pursuant to General Statutes § 4-183, the plaintiff timely filed an administrative appeal with the trial court. The plaintiff claimed that because the resources in question generated income, the hearing officer should have allocated them to her resource allowance. Relying on definitions of income in the Internal Revenue Code, 26 U.S.C. § 1 et seq., and dictionaries, the court concluded that "such capital gains are considered income to the owner in every other context and by every other governmental agency. They are moneys currently generated by the assets in question and available to the owners of those assets."

The court remanded the case for a new hearing and ordered that the defendant must consider the resources in question to be resources that potentially could be allocated to the plaintiff's resource allowance. The defendant filed this appeal from a final judgment of the trial court.[10]

I

As a threshold matter, we must determine whether the death of the plaintiff during the pendency of this

[10] General Statutes § 4-183 (j) characterizes any remand order in an administrative appeal as a final judgment. *Connecticut Resources Recovery Author-*

appeal has rendered the appeal moot. After examining the record and the briefs of both parties, it appeared to us that the issue of whether the appeal was moot was fairly suggested. Although neither the defendant nor the plaintiff briefed this issue, we afforded both parties an opportunity at oral argument to address the issue. Although both the plaintiff and the defendant claim that the appeal is not moot, because the question of mootness implicates our subject matter jurisdiction; *Stamford Hospital* v. *Vega*, 236 Conn. 646, 652–53, 674 A.2d 821 (1996); we must consider the issue. We conclude that this appeal is not moot because we can grant practical relief to the parties.

"Mootness deprives this court of subject matter jurisdiction. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . [I]t is not the province of the appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . If no practical relief can be afforded to the parties, the appeal must be dismissed." (Citations omitted; internal quotation marks omitted.) *ALCA Construction Co.* v. *Waterbury Housing Authority*, 49 Conn. App. 78, 80–81, 713 A.2d 886 (1998).

Additional facts are necessary for a proper discussion of this issue. At oral argument, the defendant claimed that this appeal is not moot because there is practical relief that this court can grant it. "The test for determining mootness of an appeal is whether there is an any practical relief this court can grant the appellant." (Internal quotation marks omitted.) Id., 81. Specifically, the defendant claims that this appeal is not moot

*ity* v. *Commissioner of Environmental Protection*, 233 Conn. 486, 496, 659 A.2d 714 (1995).

because our resolution of the issue raised on appeal will also necessarily determine whether the medicaid system, pursuant to 42 U.S.C. § 1396a (a) (34),[11] or the plaintiff's estate is responsible for certain medical expenses incurred by the plaintiff's husband.

In its appeal to this court, the defendant challenges the propriety of the trial court's conclusion that the $84,848.85 in resources generated income and, therefore, could potentially be allocated to the plaintiff's resource allowance. The defendant's calculation of the plaintiff's resource allowance directly influenced its determination of her husband's eligibility for medicaid benefits. "The resource allowance is protected from the institutionalized applicant's health care obligations and does not count against the applicant's financial eligibility." *Burinskas* v. *Dept. of Social Services*, supra, 240 Conn. 149. "Because this increase in the resource allowance results from a transfer of resources from the institutionalized spouse to the community spouse, the value of the institutionalized spouse's resources is brought closer to the [medicaid] eligibility level." Id., 149–50. Accordingly, in resolving the issue on appeal, we will also necessarily determine whether the hearing officer improperly affirmed the defendant's denial of the plaintiff's husband's medicaid application.

In her appeals to the hearing officer and to the trial court, the plaintiff not only challenged the calculation of her resource allowance, but also the denial of her husband's medicaid application. The hearing officer

---

[11] Section 1396a (a) (34) of title 42 of the United States Code provides that a state medicaid plan must "provide that in the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan and furnished in or after the third month before the month in which he made application (or application was made on his behalf in the case of a deceased individual) for such assistance if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished . . . ."

refused to allocate any portion of the $84,848.85 in resources to the plaintiff's resource allowance because it did not generate income and, therefore, she attributed those resources to the plaintiff's husband. As a result, the hearing officer affirmed the defendant's denial of the plaintiff's husband's application because his resources exceeded the eligibility limit of $1600.

The trial court reversed the decision of the hearing officer and remanded the case for a new hearing, concluding that the resources in question generated income. On remand, if the hearing officer determines that at least $83,248.86 of the $84,848.85 in resources should have been transferred to the plaintiff's resource allowance, then the defendant's denial of the plaintiff's husband's application was improper because, as a result of that transfer, his resources would have fallen below the eligibility limit of $1600. As a result, medicaid could assume liability for certain medical expenses incurred by the plaintiff's husband. See 42 U.S.C. § 1396a (a) (34); 42 C.F.R. § 435.914 (a). If we conclude, however, that the hearing officer properly refused to allocate the resources to the plaintiff's resource allowance, then we will necessarily conclude that the hearing officer properly affirmed the defendant's denial of the plaintiff's husband's application because his resources exceeded the eligibility limit.

Because our resolution of the issue raised on appeal will necessarily determine whether the medicaid system or the plaintiff's estate is responsible for certain medical expenses incurred by the plaintiff's husband, we conclude that this appeal is not moot because there is practical relief that we can grant to the parties.[12]

---

[12] At oral argument, the plaintiff claimed that this appeal is also reviewable under the "capable of repetition, yet evading review" exception to the mootness doctrine. See *Loisel* v. *Rowe*, 233 Conn. 370, 382, 660 A.2d 323 (1995). Because we conclude that this appeal is not moot, it is unnecessary for us to reach that claim.

## II

The defendant claims that the trial court improperly determined that $84,848.85 in spousal resources constituted income producing resources within the meaning of 42 U.S.C. § 1396r-5 (e) (2) (C) and asks us to affirm the decision of the hearing officer. Specifically, the defendant contends that, pursuant to the definition of income under the Supplemental Security Income Act, 42 U.S.C. § 1381 et seq., and accompanying federal regulations, resources that generate only capital gains are not income producing. See 42 U.S.C. § 1382a; 20 C.F.R. §§ 416.1102 and 416.1103. The plaintiff claims that, pursuant to the definition of income in dictionaries and the internal revenue code, the resources in question generated income. Although we agree with the defendant, we find it unnecessary to look beyond the text of § 1396r-5 (e) (2) (C) and its purpose to reach our conclusion.

"Judicial review of an agency decision is limited. . . . [W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citations omitted; internal quotation marks omitted.) *Burinskas* v. *Dept. of Social Services*, supra, 240 Conn. 146–47.

Although the words "income producing" do not appear in the text of § 1396r-5 (e) (2) (C), neither party challenges the conclusion of the Department of Health

and Human Services that if a hearing officer determines, pursuant to § 1396r-5 (e) (2) (C), that it is necessary to allocate additional resources to the resource allowance, such resources must produce income. See Medicaid Bulletin No. 93-21.[13] Therefore, we assume, without deciding, that when a resource allowance must be adjusted to provide the community spouse with a minimum needs allowance in accordance with § 1396r-5 (e) (2) (C), federal law requires that the resources that will be transferred must generate income. Instead, the plaintiff and defendant offer different interpretations of "income producing." The defendant claims that the hearing officer's interpretation was proper, whereas the plaintiff contends that the trial court's interpretation was correct. Because the words "income producing" do not appear in the text of § 1396r-5 (e) (2) (C), we

---

[13] The Boston regional office of the Department of Health and Human Services issued Medicaid Bulletin No. 93-21 to regional state medicaid agencies to clarify the scope of a hearing officer's authority, pursuant to § 1396r-5 (e) (2) (C), to increase the resource allowance so that a community spouse can meet her minimum needs allowance. This bulletin provides in relevant part: "Several states have inquired whether a State hearing officer can increase the protected resource amount (PRA), a component of the community spouse resource allowance, under the authority of [42 U.S.C. § 1396r-5] (e) (2) (C). The purpose would be to bring the community spouse's income closer to the amount of the community spouse monthly income allowance in the post-eligibility period. . . . Section [42 U.S.C. § 1396r-5] (e) (2) (C) provides that, if either spouse establishes that the community spouse resource allowance is inadequate to raise the community spouse's income to the minimum monthly maintenance needs allowance, an amount adequate to provide such a minimum monthly maintenance needs allowance shall be substituted. However, you must consider the community spouse's other income in determining how much more income would need to be generated from *income-producing resources* to bring his/her income up to the monthly maintenance needs allowance. *Inherent in this concept is that resources used to fulfill an increased PRA under this provision must be income-producing.* Otherwise, the transfer would not serve to increase the income of the community spouse." (Emphasis added.)

Additionally, that portion of the Uniform Policy Manual that outlines the procedure for adjusting the resource allowance requires that spousal resources transferred to the resource allowance must be income producing. Uniform Policy Manual (1989) § P-1570.30 (7).

look for interpretive guidance to the language of the statute and its purpose. See *Winchester Woods Associates* v. *Planning & Zoning Commission*, 219 Conn. 303, 309–310, 592 A.2d 953 (1991). We conclude that the trial court improperly determined that the resources in question generated income. Our conclusion is predicated on the language of § 1396r-5 (e) (2) (C) and the legislative purpose underlying this statute.

Section 1396r-5 (e) (2) (C) provides that if either spouse "establishes that the community spouse resource allowance . . . is inadequate to raise the community spouse's income to the minimum monthly maintenance needs allowance, there shall be substituted, for the community spouse resource allowance under subsection (f) (2) of this section, *an amount adequate to provide such a minimum monthly maintenance needs allowance.*" (Emphasis added.) 42 U.S.C. § 1396r-5 (e) (2) (C). The minimum needs allowance represents the minimum amount of income a community spouse needs to meet her basic needs. See 42 U.S.C. § 1396r-5 (d) (3); *Cleary* v. *Waldman*, 959 F. Sup. 222, 231 (D. N.J. 1997) (minimum needs allowance is "an amount designed to ensure that the community spouse has an income . . . above the official poverty line"). We conclude that since the purpose of the transfer of resources is to provide sufficient income to meet the monthly maintenance needs of the community spouse, the resources that are transferrable must be resources that will provide a regular stream of income to the community spouse. Resources that would generate moneys for the community spouse only upon their sale do not serve the purpose of the statute and do not qualify as income producing resources that would be transferrable to the community spouse under § 1396r-5 (e) (2) (C). Transferring to the plaintiff's resource allowance resources that generate only capital gains would not provide her with any additional monthly

income that she could use to meet her minimum monthly maintenance needs. Accordingly, resources that generate only capital gains cannot be considered income producing under § 1396r-5 (e) (2) (C).[14]

Because we conclude that the text of § 1396r-5 (e) (2) (C) and its purpose collectively establish that the resources in question did not generate income in the sense that the term is used in the statute, we find it unnecessary to look for interpretive guidance to the Supplemental Security Income Act and the internal revenue code.

### III

The plaintiff claims, in what constitutes an alternative ground for affirming the trial court's order, that even

---

[14] Our conclusion derives additional support from dicta in *Ford* v. *Dept. of Human Services,* 500 N.W.2d 26 (Iowa 1993). In *Ford,* the plaintiff, a community spouse, requested an administrative hearing pursuant to § 1396r-5 (e) (2) (C) to increase her resource allowance so that she could meet her minimum needs allowance. Id., 28. After a hearing, the "administrative law judge increased the [resource allowance] to an amount sufficient, if invested in bank accounts and certificates of deposit, to generate enough additional monthly income to reach [her minimum needs allowance of] $1,500." Id. Because the plaintiff already received $1165.92 in monthly income, she was "entitled to sufficient resources to generate an additional $334.08 per month." Id. On administrative review, the state department of human services determined that "instead of looking at the investment of resources necessary to generate sufficient interest income [to help the plaintiff generate her minimum needs allowance], the agency should look at the resources necessary to purchase a single-premium life annuity that would furnish monthly payments to the community spouse in an amount sufficient to bring the spouse's income up to the [minimum needs allowance of] $1,500." Id., 29. Although the department did not require the plaintiff to purchase an annuity, it based its calculation of her resource allowance on what amount of spousal resources must be liquidated in order to purchase an annuity that would generate sufficient monthly income to enable her to meet her minimum needs allowance. Id. The Iowa Supreme Court affirmed the department's use of an "annuity-method" for adjusting the resource allowance. Id., 31–32. Although the court in *Ford* did not decide the question presently before us, its decision demonstrates that, in this context, income-producing resources constitute those resources that generate income that a community spouse can use to meet her minimum monthly maintenance needs.

if the resources in question did not generate income, she should have been afforded an opportunity to convert these resources into income producing resources. The plaintiff asks us to determine whether, pursuant to § 1396r-5 (e) (2) (C), the defendant should have authorized a conversion of these resources into income producing resources and allocated to the resource allowance an amount of the converted resources sufficient to enable her to generate her minimum needs allowance. We agree with the plaintiff and conclude that, pursuant § 1396-5 (e) (2) (C), the defendant should have authorized a conversion of the resources and allocated to the resource allowance an amount of the converted resources sufficient to enable the plaintiff to generate her minimum needs allowance.

Additional facts are necessary to a resolution of this issue. The hearing officer's decision attached significance to the *form* in which these resources existed on the date the plaintiff's husband was institutionalized. The hearing officer denied the plaintiff's request to allocate these resources to her resource allowance because "they were not income producing *at the time of the spousal assessment,* i.e., as of the date of the [plaintiff's] husband's institutionalization (November 17, 1994)." (Emphasis added.) The hearing officer determined that spousal resources that generated only capital gains on the date of institutionalization could not later be converted into income producing resources and, if warranted under § 1396r-5 (e) (2) (C), allocated to the resource allowance.

In her appeal to the trial court, the plaintiff claimed that the hearing officer's decision was improper because, on May 11, 1995,[15] she notified the hearing officer that she had converted the resources in question

---

[15] The hearing officer rendered her decision on June 9, 1995.

into resources that generated income. In its memorandum of law in opposition to the administrative appeal, the defendant responded: "The plaintiff also contends that the fair hearing officer erred in basing her decision on the state of the O'Callaghans' finances as they existed on November 17, 1994, the date on which [the plaintiff's husband] became institutionalized, and by not considering the reconfiguration of the O'Callaghans' assets from growth-producing to interest-bearing investments, which was carried out after the hearing. Those assertions do not have merit. Both federal and state law explicitly require that the financial assessment for medicaid eligibility be done as of the date of the applicant's institutionalization. Uniform Policy Manual § 1507.05; see also 42 U.S.C. § 1396r-5 (c) (1)."

On the basis of its conclusion that the resources in question generated income, the trial court remanded the case to the defendant with the order that the defendant must consider the resources in question to be resources that potentially could be allocated to the plaintiff's resource allowance. The trial court did not reach the plaintiff's conversion claim. The plaintiff's conversion claim constitutes an alternative ground for affirming the trial court's order that the defendant must consider the resources in question to be resources that potentially could be allocated to the plaintiff's resource allowance. Although the plaintiff did not file a preliminary statement of issues alleging that this claim constitutes an alternative ground for affirmance; see Practice Book § 63-4 (a) (1); we will consider it.[16]

---

[16] "Although an appellee should comply with Practice Book § [63-4 (a) (1)] when seeking judgment on alternative grounds, this court is authorized to rely upon alternative grounds supported by the record to sustain a judgment." (Internal quotation marks omitted.) *Scalzo* v. *Danbury*, 224 Conn. 124, 125 n.2, 617 A.2d 440 (1992); *Pepe* v. *New Britain*, 203 Conn. 281, 292, 524 A.2d 629 (1987). Because this claim presents a question of law and the record before us on appeal includes the record that was before the trial court, we conclude that the record is adequate to permit our review. The defendant was not prejudiced by the plaintiff's failure to comply with § 63-

Neither Medicaid Bulletin No. 93-21 nor § P-1570.30 of the Uniform Policy Manual specifically addresses the propriety of a conversion of spousal resources under the present circumstances. "Although courts ordinarily defer to an agency's interpretation of statutory text, where, as in this case, the construction of a statute . . . has not previously been subjected to . . . a governmental agency's time-tested interpretation . . . that construction constitutes a question of law for which deference is not warranted." (Citation omitted; internal quotation marks omitted.) *Burinskas* v. *Dept. of Social Services*, supra, 240 Conn. 147.

We conclude that after the hearing officer transferred all available income producing spousal resources to the plaintiff's resource allowance and determined that the income generated by the adjusted resource allowance was insufficient to generate the plaintiff's minimum needs allowance and that additional spousal resources that did not produce income were available, § 1396r-5 (e) (2) (C) required the hearing officer to authorize a conversion of the additional resources into income producing resources and to allocate to the resource allowance an amount of the converted resources sufficient to enable the plaintiff to generate her minimum needs allowance.[17] Our decision is predicated on a careful consideration of the text of § 1396r-5 (e) (2) (C), its purpose, the legislative history of the MCCA and the relationship between § 1396r-5 (e) (2) (C) and § 1396r-5 (c) (1).

We begin with the words of the statute. Section 1396r-5 (e) (2) (C) provides in relevant part that "[i]f either

4 (a) (1) because it had the opportunity to address this alternative ground for affirmance in its reply brief. *Chase* v. *State*, 45 Conn. App. 499, 501 n.3, 696 A.2d 1299 (1997); *In re Jennifer G.*, 29 Conn. App. 689, 692, 617 A.2d 921 (1992).

[17] The record discloses that the resources in question have already been converted into income producing resources. In future instances, we reserve

such spouse establishes that the community spouse resource allowance . . . is inadequate to raise the community spouse's income to the minimum monthly maintenance needs allowance, there shall be substituted, for the community spouse resource allowance . . . an amount adequate to provide such a minimum monthly maintenance needs allowance." 42 U.S.C. § 1396r-5 (e) (2) (C). "The legislature is quite aware of how to use language when it wants to express its intent to qualify or limit the operation of a statute"; *State* v. *Ingram*, 43 Conn. App. 801, 825, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997); and there is nothing in the text of this statute that indicates that the legislature prohibited the defendant from authorizing a conversion of the resources in question and allocating an appropriate amount to the resource allowance.

Second, our interpretation effectuates the legislature's stated purpose. The plain text of § 1396r-5 (e) (2) (C) provides that, if the resource allowance does not generate sufficient income to provide the community spouse her full minimum needs allowance, the hearing officer "shall" adjust the resource allowance to enable the community spouse to generate her minimum needs allowance. 42 U.S.C. § 1396r-5 (e) (2) (C). Converting the resources in question into income producing resources and transferring an appropriate amount to the plaintiff's resource allowance would have provided her with additional income that she could have used to meet her minimum monthly maintenance needs, whereas the hearing officer's interpretation frustrates the purpose of § 1396r-5 (e) (2) (C) because it prohibits the conversion of those resources despite the determination that the resource allowance does not generate sufficient income to enable the community spouse to meet her minimum needs. "A statute . . . should not

for the determination of the commissioner the specific procedure by which it will effectuate a conversion of resources.

be interpreted to thwart its purpose." (Internal quotation marks omitted.) *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 508, 636 A.2d 1342 (1994).

Third, our interpretation does not, as the defendant claims, undermine an important objective of the MCCA. Section 1396r-5 (e) (2) (C) was enacted as part of the MCCA. The legislative history of the MCCA establishes that Congress sought to end the pauperization of community spouses "by assuring that the community spouse has a sufficient—but not excessive—amount of income and resources available to her while her spouse is in a nursing home." H.R. Rep. No. 100–105 (II), 100th Cong., 2d Sess. at 65 (1988), reprinted in 1988 U.S.C.C.A.N. 857, 888. The defendant claims that our conclusion will provide the plaintiff with an excessive amount of resources. The defendant's argument fails because it ignores that § 1396r-5 (e) (2) (C) places a ceiling on the amount of resources a hearing officer can transfer to the resource allowance. Section 1396r-5 (e) (2) (C) limits the transfer of resources to "an amount adequate to provide such a minimum monthly maintenance needs allowance."

Fourth, the text of § 1396r-5 (c) (1) (A)[18] does not, as the defendant claims, preclude the conversion of the resources in question. Nor does it prohibit a hearing officer from allocating an appropriate amount of the converted resources to the resource allowance for the purpose of enabling a community spouse to generate her minimum needs allowance. Instead, § 1396r-5 (c)

---

[18] Section 1396r-5 (c) (1) of title 42 of the United States Code provides: "Computation of spousal share at time of institutionalization

"(A) Total joint resources

"There shall be computed (as of the beginning of the first continuous period of institutionalization . . . of the institutionalized spouse)

"(i) the total value of the resources to the extent either the institutionalized spouse or the community spouse has an ownership interest, and

"(ii) a spousal share which is equal to 1/2 of such total value."

(1) (A) mandates only that the defendant must calculate the total value of a couple's resources as of the date of the medicaid applicant's institutionalization and compute an appropriate spousal share. This method of calculating a couple's resources is commonly referred to as the "snap shot." L. Torch, "Spousal Impoverishment or Enrichment? An Assessment of Asset and Income Transfers by Medicaid Applicants," 4 Elder L. J. 459, 471 n.68 (1996).

Fifth, our interpretation of § 1396r-5 (e) (2) (C) does not frustrate the purpose of § 1396r-5 (c) (1) (A). A congressional report suggests that Congress selected the date of a medicaid applicant's institutionalization as the date of assessment to promote fairness and consistency by ensuring that a couple will receive the same financial assessment regardless of whether they apply for medicaid immediately after one spouse becomes institutionalized, or whether they wait until they have redistributed or spent down a portion of their assets before they apply for medicaid. See H.R. Rep. No. 100–105 (II), 100th Cong., 2d Sess. at 65 (1988), reprinted in 1988 U.S.C.C.A.N. 857, 901. Converting the resources in question and transferring an appropriate amount to the resource allowance will not affect the date on which the defendant assesses the value of the couple's resources.

Finally, we reject the hearing officer's interpretation because it produces an unreasonable result. "The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of [a statute] is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable." *Maciejewski* v. *West Hartford*, 194 Conn. 139, 151–52, 480 A.2d 519 (1984). If we adopted the hearing officer's interpretation, the determination of whether spousal resources could be transferred to the resource allowance would turn on the form in which these resources existed on the date of institutionalization.

Under the hearing officer's approach, the plaintiff would have been entitled to an appropriate amount of the resources in question if, at the date of her husband's institutionalization, they had generated income or dividends; however, because these resources generated capital gains, the hearing officer concluded that they could not be allocated to the resource allowance. Our interpretation avoids this unreasonable result.

We therefore, on the alternate ground presented, affirm the judgment of the trial court remanding the case to the commissioner for a new hearing. On remand, the hearing officer must determine what amount of the resources in question, which the record establishes have already been converted into income producing resources, should have been transferred to the plaintiff's resource allowance for the purpose of enabling her to generate her minimum needs allowance, and whether, as a result of that transfer, the defendant improperly denied the medicaid application of the plaintiff's husband. If the hearing officer determines that the defendant improperly denied the application, the hearing officer must determine to what extent the defendant may be responsible for the husband's medical expenses.

The judgment is affirmed.

In this opinion the other judges concurred.

