[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This an administrative appeal by the plaintiff, Carmen Huertas, from an April 17, 2000 decision of a fair hearing officer for the defendant, Department of Social Services ("DSS"), denying her temporary family assistance benefits ("TFA benefits") under General Statutes §17b-112.
The plaintiff is a single mother of five children: (Return of Record ("ROR"), Volume I, p. 88; Volume II, p. 15), who received support through the state's TFA program. (ROR, Volume 1, p. 9.) While receiving this benefit, during March and April, 1999, the plaintiff was employed at CT Page 6324 Sam's Club in Berlin, Connecticut. (ROR, Volume I, pp. 43, 90; Volume II, p. 8.) On March 22, 1999, soon after she began working at Sam's Club, the plaintiff went on medical leave during a two-week period. (ROR, Volume I, pp. 91-92; Volume II, pp. 20-21.) After returning from medical leave, on April 10, 1999, the plaintiff was fired by Sam's Club when she failed to punch out for a fifteen minute break. (ROR, Volume I, p. 9; Volume II, p. 21.) The plaintiff did not make a claim for unemployment compensation and soon became employed again. (ROR, Volume I, p. 95, Volume II, p. 39.)
Subsequently, the plaintiff applied for a six-month extension of her TFA benefits.[1] To receive an extension, the plaintiff had to demonstrate a "good faith effort to comply with the requirements of the program." General Statutes § 17b-112 (c). Section 8540.10.D Uniform Policy Manual ("UPM")[2] provision provides: "2 . . . [A] good faith effort to substantially comply with Employment Services requirements does not exist: if any one of the following circumstances exist. . . . d. For active assistance units, in the last six (6) months of time limited assistance or during an extension, a mandatory Employment Services participant did not comply with program requirements without good cause in one of the following ways: . . . (3) was fired from employment due to willful misconduct. . . ." UPM § 8540.10.D.2.d.3.
On June 24, 1999, DSS denied the plaintiffs petition for an extension. (ROR, Volume I, p. 18.) A fair hearing was held on October 18, 1999, at which time DSS took the position that the extension was denied for lack of good cause, due to the plaintiffs firing by Sam's Club. The DSS hearing officer issued a decision on January 19, 2000, upholding the DSS determination on the ground that the plaintiff had been fired for "willful misconduct," thereby lacking good cause. (ROR, Volume I, pp. 1-6.) In reaching her decision, the hearing officer specifically made use of the standard for "willful misconduct" as defined in regulations of the Department of Labor ("DOL") governing the unemployment compensation program. (ROR, Volume I, pp. 2, 4, ¶ 6.)[3]
In a memorandum dated February 7, 2000, the plaintiff asked DSS to reverse its decision of January 19, 2000. (ROR, Volume 1, pp. 122b-123.) On February 29, 2000, DSS granted reconsideration pursuant to General Statutes § 4-18 1a. (ROR, Volume I, p. 136.) A second decision was issued by the hearing officer on April 17, 2000, upholding the decision of DSS to deny the extension for not demonstrating good faith based upon the lack of good cause in the Sam's Club firing. (ROR, Volume I, pp. 8-13.)[4] This decision found the lack of good cause to be the willful misconduct of the plaintiff in the firing at Sam's Club, but dues not employ the DOL unemployment compensation standards to reach its result. (See ROR, Volume I, p. 11, concluding that there was willful misconduct CT Page 6325 and referring to case worker's notes stating that the plaintiff "indicates she was fired from Sam's Club in 4-99 for willful misconduct. . . .") These notes also state that the social worker confirmed with Sam's Club that the plaintiff "was terminated for willful misconduct." (ROR, Volume I, p. 40.) The plaintiff has appealed from the final decision of the hearing officer.[5]
In deciding the issues raised by the plaintiff, the court uses the standard of review as set forth in O'Callaghan v. Commissioner of SocialServices, 53 Conn. App. 191, 203 (1999):
 Judicial review of the decision of an administrative agency is limited. [W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. Conclusions of law reached by the administrative agency must stand if-the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts . . .
(Citations omitted; internal quotation marks omitted.)
 The scope of permissible review is governed by § 4-183 (j) and is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [agency]. . . . The conclusion reached by the [agency] must be upheld if it is legally supported by the evidence. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the commissioner, we cannot disturb the conclusion reached by him. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion.
(Citations omitted; footnote omitted; internal quotation marks omitted.)Domestic Violence Services of Greater New Haven v. FOIC, CT Page 632647 Conn. App. 466, 469-70 (1998).
The first issue raised by the plaintiff is that the communications from DSS did not give her sufficient notice of the nature of her violations of TFA. Here the notice of denial cited the UPM provisions and informed the plaintiff that sh : was being denied an extension due to a lack of good faith effort. (ROR, Volume I, p. 18.) There was also a reference to termination for willful misconduct. (ROR, Volume I, p. 22.) Moreover, the attorney for the plaintiff requested and received the fair hearing summary in advance of the hearing. (ROR, Volume I, pp. 15, 61.) This notice met constitutional standards.
Under Goldberg v. Kelly, 397 U.S. 267, 90 S.Ct. 1011, 25 L.Ed.2d 287
(1970), all that is constitutionally required is a statement of the reasons for the action. That was provided in the notice referencing the legal bases for the termination. Due process mandates "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . (Citations omitted.) Mullane v. Central Hanover B. T. Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). As our Supreme Court has stated: "The purpose of notice . . . is to advise all affected parties of their opportunity to be heard and to be apprised of the relief sought . . ." (Citations omitted; internal quotation marks omitted.) Concerned Citizens of Sterling, Inc. v. Connecticut SitingCouncil, 215 Conn. 474, 485 (1990). Therefore, the court finds for DSS on this issue.
The plaintiff also claims that the hearing officer in the revised decision stated no standard to evaluate whether the plaintiff was terminated for willful misconduct. In the first decision the hearing officer merely adopted the DOL standards. DSS regulation § 8540.10, however, makes this decision one for DSS, not for DOL. In the second decision the hearing officer did not describe the standard at all, but concluded on the record that DSS had been correct.[6] DSS must set forth a standard under which the facts are to be evaluated. Burinskas v.Dept. of Social Services, 240 Conn. 141 (1966).
A similar issue arose in Paris v. F. Korbel Bros., Inc.,751 F. Sup. 834 (N.D.Cal. 1990). There the plaintiff sought damages for denial of COBRA health benefits under federal law. The employer defended by claiming that the plaintiff had been fired for "gross misconduct," an exception to the COBRA statute. In deciding in favor of the plaintiff, the court adopted the standard of the California unemployment compensation law for "willful misconduct." Where the Congress had not defined the term "gross misconduct," the state definition shed light on the meaning of the phrase. CT Page 6327 The court was unable to arrive at its conclusion without developing a standard. Id., 838.
The hearing officer here should have at least used the DOL definitions for reference in creating a standard to decide whether the plaintiffs termination had been because of willful misconduct. In using the term "willful misconduct," as opposed to merely referring to a lack of good cause, DSS was obliged to set forth a standard drawn from labor and employment law. The decision violates due process because "no standard of conduct is specified at all." Chicago v. Morales, 527 U.S. 41, 60,119 S.Ct. 1849, 144 L.Ed.2d 67 (1999), quoting Coates v. Cincinnati,402 U.S. 611, 614 (1971).
There is a prejudicial error under § 4-183)(j) requiring a new determination. The court does not accept the suggestion of the plaintiff, however, that the appropriate relief is to follow § 4-183
(k) and order DSS to grant the plaintiff her TFA extension. Here the appropriate remedy is a remand for a new hearing. See Burniskas v. Dept.of Social Services, supra, 240 Conn. 153-54, n. 16.
The appeal is sustained and the case is remanded for a hearing in accordance with this opinion.
 ____________________ HENRY S. COHN, JUDGE