[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Zbiginiew Szewczyk, pursuant to General Statutes §§ 17b-61 and 4-183, from a final decision by the defendant, Department of Social Services ("DSS"), denying the plaintiff medicaid benefits.
The record indicates the following pertinent facts. The plaintiff is a Polish native who has overstayed his visa and is admittedly an illegal alien or non-citizen. (Return of Record ("ROR"), Volume III, p. 23.) On or about November 10, 1998, the plaintiff visited his physician complaining of nausea, loss of weight and general weakness. (ROR, Volume I, p. 56.) His physician sent the plaintiff to oncologist Robert Erichson who ordered testing. (ROR, Volume I, p. 56.) The testing confirmed a CT Page 8524 diagnosis of leukemia. (ROR, Volume I, pp. 124-26.) On November 24, 1998, the plaintiff found himself too weak to walk and in pain. (ROR, Volume III, pp. 33-36.) Dr. Erichson advised the plaintiff to go to the Stamford Hospital emergency room. (ROR, Volume I, p. 60; ROR, II, p. 204.) The plaintiff was diagnosed as suffering from acute myelogenous leukemia. (ROR, Volume I, p. 60; ROR, Volume II, p. 204.) At the hospital, the plaintiffs bone marrow was biopsied, he was given a hickman catheter and started on chemotherapy. (ROR, Volume I, pp. 60-63.) After a month of treatment, the plaintiff was discharged showing some improvement. (ROR, Volume II, p. 160.)
Further findings are taken from the decision of the DSS fair hearing officer:
 8. On February 26, 1999, an application for Medicaid assistance was filed on behalf of the [plaintiff] . . .
 9. On April 24, 1999, Colonial Cooperative Care, Inc. found that the [plaintiff] met the criteria for disability as set out in the Department's regulations. . . .
 10. On May 11, 1999, the Department's Medical Review Team found that the [plaintiffs] medical conditions did not meet the criteria for emergency medical services . . .
 11. On May 17, 1999, the Department denied the [plaintiff] emergency medical assistance under the Medicaid Program . . .
 12. The [plaintiff] would not have immediately died on November 24, 1998 if he had not received the treatment administered to him on that date at Stamford Hospital. . . .
 13. Bone marrow biopsies and the insertion of a triple lumen Hickman catheter are not emergency events . . .
 14. The [plaintiff] is ineligible for emergency medical services under the Medicaid program. . . .
(Citations omitted.) (ROR, Volume I, pp. 2-3.)
The hearing officer relied on the Uniform Policy Manual ("UPM") § 3000.01, which sets forth the definition of emergency medical condition for ineligible noncitizens.[1] Section 3000.01 of the UPM provides as follows:
Emergency Medical Condition
CT Page 8525
 A medical condition is considered an emergency when it is of such severity that the absence of immediate medical attention could result in placing the patient's health in serious jeopardy. This includes emergency labor and delivery, and emergencies related to pregnancy, but does not include care or services related to an organ transplant procedure.
The hearing officer concluded that, under this regulation, the plaintiff was "diagnosed with acute myelogenous leukemia and was admitted to Stamford Hospital, where he underwent certain medical procedures. Although these procedures were necessary to begin the [plaintiffs] chemotherapy, there is no indication that they were of an emergency nature; i.e., that the [plaintiffs] health would have been in serious jeopardy had they not begun on November 24, 1998 (the date of admittance). Accordingly, the [plaintiff] was not afflicted with an emergency medical condition under this section of the 11PM and, therefore, was ineligible for assistance under the Medicaid Program." (ROR, Volume I, p. 4.) The plaintiff has appealed from the final decision of DSS denying the plaintiff medicaid benefits and aggrievement is found based on that denial.
The Supreme Court has set forth the standards of review to be applied by this court as follows. "We begin our analysis by noting that our review of an agency's factual determination is constrained by the [UAPA]. Specifically, General Statutes § 4-183 (j)(5) mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are. clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . . We have interpreted the standard of review set forth in the act as limiting our review such that [w]ith regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which CT Page 8526 reasonably supports the decision of the commissioner, we cannot disturb the conclusion reached by him. . . ." (Citations omitted; internal quotation marks omitted.) Salmon v. Dept. of Public Health AddictionServices, 58 Conn. App. 642, 660-61, cert. granted on other grounds,254 Conn. 926 (2000).
Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citations omitted; internal quotation marks omitted.)O'Callaghan v. Commissioner of Social Services, 53 Conn. App. 191, 203
(1999).
The first issue on appeal raised by the plaintiff is that the hearing officer made use of a standard to evaluate emergency medical conditions that was too narrow under applicable federal and state law. See Burinskasv. Department of Social Services, 240 Conn. 141, 151 (1997) (hearing officer erred in setting forth "exceptional circumstances" standard).
In Yale-New Haven Hospital v. State of Connecticut Department of SocialServices, Superior Court, judicial district of New Britain, Docket No. 495548 (July 31, 2000, Cohn, J.), this court evaluated42 U.S.C. § 1396b(v) and 11PM § 3000.01, as well as the cases ofGreenery Rehabilitation Group, Inc. v. Hammon, 150 F.3d 226 (2d Cir. 1998) and Quiceno v. Dept. of Social Services, 45 Conn. Sup. 580 (1999). The court concluded, relying on this statutory and case law, that "emergency" meant "urgent medical treatment." "In the medical context, an "emergency' is generally defined as "a sudden bodily alteration such as is likely to require immediate medical attention.' Webster's third New International Dictionary 741 (1981). The emphasis is on severity, temporality and urgency. We believe that 42 U.S.C. § 1396b(v)(3) clearly conveys this commonly understood definition." GreeneryRehabilitation Group, Inc., supra, 232.
In these cases, the plaintiffs were entitled to medicaid "until the `direct harm,' if any, that brought [them] to the emergency room was eliminated, but [were] not entitled to governmental support for the treatment for [leukemia and other medical conditions], even if [their] life was at risk." Yale-New Haven Hospital v. State of ConnecticutDepartment. of Social Services, supra, Superior Court, Docket No. 495548. This court, seeking to expand the limited definition of emergency used by the Yale-New Haven hearing officer, stated that an emergency is "any condition that is of such severity that in the absence of immediate CT Page 8527 medical attention, the patient's health would be placed in serious jeopardy." Id.
The hearing officer applied the correct standard. In his decision, the hearing officer found that the plaintiff "would not have immediately died" on the date of admission. (ROR, Volume I, p. 3, ¶ 12.) The hearing officer also found that the biopsies and the insertion of the hickman catheter were not "emergency events." (ROR, Volume I, p. 3, ¶ 13.) The hearing officer concluded that the plaintiffs health would not have been in serious jeopardy had the hospital not begun these procedures on the date of admittance. (ROR, Volume I, p. 3.) Therefore, the hearing officer, and hence the Department, did not act "unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . ." in setting forth what constitutes an "emergency medical condition." CadlerockProperties Joint Venture, L.P. v. Commissioner, 253 Conn. 661, 669, cert denied, 121 S.Ct. 1089, 148 L.Ed.2d 263 (2000).
The plaintiff also claims that the hearing officer's conclusions are not supported by substantial evidence in the record. The administrative record indicates that the plaintiff appeared in the emergency room two weeks after he suffered his initial symptoms. (ROR, Volume II, p. 165.) The plaintiff received the beginning treatments in the hospital for a medical condition that is only cured over the long term, and he was essentially admitted to begin a course of chemotherapy. (ROR, Volume I, p. 162.) It is true that when he decided to go to the emergency room, the plaintiffs condition had reached a crisis stage, (ROR, Volume III, p. 509), but the record also contains notes of health professionals showing that the plaintiff was not in need of urgent care on November 24th. (ROR, Volume I, p. 56) (The plaintiff denied fever, chills, cough, gum bleeding or excessive bruising); (ROR Volume I, p. 58) (The notes indicate his pallor as very pale, but his vital signs are listed as normal); (ROR, Volume II, pp. 204Z05.)[2] There is substantial evidence in the record to sustain the hearing officer's factual findings and conclusions of law.
Based on the foregoing, the plaintiffs appeal is therefore dismissed.
Henry S. Cohn, Judge